UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| **In re:** | ) | Case No. 20-62473-pmb |
| | ) | |
| **Ascension Air Management, Inc.** | ) | Chapter 7 |
| | ) | |
| *Debtor.* | ) | Judge Baisier |
| | ) | |
| Mason Holland, as Trustee for the | ) | |
| Holland Family Trust, and MMT, LLC, | ) | **Contested Matter** |
| | ) | |
| *Movants,* | ) | |
| v. | ) | |
| | ) | |
| S. Gregory Hays, as Chapter 7 Trustee, | ) | |
| | ) | |
| *Respondent.* | ) | |

**Motion of Mason Holland, as Trustee for The Holland
Family Trust, and MMT, LLC for Relief
from the Automatic Stay, or Alternatively for Adequate Protection**

Mason Holland, as Trustee for The Holland Family Trust (the "Trust"), and MMT, LLC (together, "Movants") move the Court, pursuant to Fed. R. Bankr. P. 4001, for entry of an order granting relief from the automatic stay pursuant to 11 U.S.C. § 362(d) of the Bankruptcy Code with respect to the Debtor and with respect to an Eclipse Aviation EA500 aircraft with Tail Number N826ES and Serial Number 550-0282 ("Aircraft") (i) to permit adjudication of a quiet title action filed in South Carolina, (ii) foreclosure of the Trust's security interest in the Aircraft; and (iii) eliminating the 14-day stay of such order pursuant to Federal Rules of Bankruptcy Procedure 4001(a)(3). A proposed order is attached hereto as **Exhibit F**.

1

**Parties, Jurisdiction and Venue**

1.      The Debtor filed this Chapter 7 on February 10, 2020 ("Petition Date").

2.      The Court has jurisdiction over this matter and over the Debtor pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. § 362.

3.      Venue over this matter is proper in this Court pursuant to 28 U.S.C. § 1409.

4.      This matter is a core proceeding which may be heard and determined by the Court pursuant to 28 U.S.C. §§ 157(b)(1) and 157(b)(2)(A)&(G). Moreover, Movants expressly consent to this Court's hearing and determining this motion.

5.      S. Gregory Hays is the Chapter 7 Trustee ("Trustee"). *(Doc. 3.)*

6.      No committee of unsecured creditors has been appointed.

7.      The 341 Meeting of Creditors was scheduled for March 17, 2020.  It was reset to April 21, 2020, pursuant to General Order 31-2020, dated March 15, 2020. (Doc. 16.)

**Background**

8.      The Trust was created in 2004 and Mason Holland is its Trustee.

*Declaration Under 28 U.S.C. §1746[1] of Mason Holland in Support of Motion for*

---

[1] 28 U.S.C. states:

Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:

*Relief from the Automatic Stay, or Alternatively Adequate Protection*, attached hereto as Exhibit A and incorporated herein by this reference, at ¶ 3.

9.     The Trust asserts a perfected and senior security interest in the Aircraft (*i.e.,* Eclipse Aviation EA500 aircraft with Tail Number N826ES and Serial Number 550-0282) pursuant to that certain Aircraft Loan and Security Agreement dated May 16, 2016, filed with the Federal Aviation Administration ("FAA") on July 7, 2016 ("Aircraft Loan and Security Agreement").[2] A copy of the Aircraft Loan and Security Agreement signed by the Debtor is attached as Exhibit B, and incorporated herein by this reference.

10.    As of March 1, 2020, the Debtor owed the Trust $2,117,436 in principal, plus $651,068.06 of accrued interest (which continues to accrue), for a total of $2,768,504.06. In fact, the Debtor made only one payment on September 30, 2016, which reduced principal by $100,000 and paid $73,813.28 of interest. Holland Dec.at ¶ 12.

11.    MMT, LLC is a limited liability company organized and existing under the laws of the State of Delaware that has its principal place of business in Charleston County, South Carolina. MMT holds a 5.667% percent ownership interest in the Aircraft. (Holland Dec.at ¶ 10.)

### Facts in Support of Requested Relief

12.    In preparing to enforce its security interest in the Aircraft, in December 2019, the Trust ordered a title search on the Aircraft. The resulting

---

(1)  If executed without the United States: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date).
(Signature)".

(2)  If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).
(Signature)".

[2]
https://www.faa.gov/licenses_certificates/aircraft_certification/aircraft_registry/record_security_agreement/).

report, dated December 5, 2019, showed that the Debtor still owned a 17.263 % ownership interest in the Aircraft.  A copy of that December 5, 2019, title report is attached as Exhibit C.

13.     Unaware the Debtor had filed this bankruptcy case, the Trust and MMT filed suit on February 14, 2020, in the Court of Common Pleas for the Ninth Judicial Circuit of South Carolina against the Debtor, the Debtor's principal S. Jamail Larkins, and others to quiet title to the Aircraft and to foreclose the Trust's security interest in the Aircraft (the "South Carolina Action").  Holland Dec., ¶ 13. Neither the Debtor nor Larkins has been served with a summons and complaint in the South Carolina Action. A copy of the complaint is attached as Exhibit D.

14.     The Debtor has not listed the Aircraft in its Schedules and did not list either the Trust or MMT as creditors.  As of the date of this Motion, the Debtor had not amended its Schedules or Statement of Financial Affairs to reflect an interest in the Aircraft.

15.     The Aircraft is in Charleston, South Carolina, currently outside, not in a hangar.  Holland Dec., ¶ 14. Considerable repairs are needed (about $50,000-$100,000) to get it airworthy. Holland Dec., ¶ 14.  Insurance coverage, if it is even available for an aircraft that is not airworthy, would run $15,000-$20,000 (although normally it would be $12k-$14K). Holland Dec., ¶ 15.

16.     In addition to the $2,768,504.06 lien claimed by the Trust, CLBD Real Estate Holding, LLC, also asserts a security interest in the Aircraft for approximately $1,000,000, pursuant to an Aircraft Security Agreement dated December 3, 2015, attached as an exhibit to the Complaint in the South Carolina Action.

17.     Thus, at a minimum the secured debt encumbering the estate's theoretical 17.263 % interest in the Aircraft is asserted to be to be not less than

4

approximately $3.768 million.  Other lienholders and interest holders also appear on the title report.

18.    As shown on the VREF report (aviation "Blue Book"), attached as Exhibit E, the price of the Aircraft if new would be approximately $2,995,000. This Aircraft was manufactured in 2014.  Holland Dec.¶ 14.

19.    The estimated value of the Aircraft as of the date of this Motion is between $400,000 and $1,000,000.  Holland Dec. at ¶ 18; VREF report attached as Exhibit E.

20.    This is a Chapter 7 liquidation case.  The Debtor has no intention of and no possibility of a reorganization.

## Relief Requested

21.    Movants seek relief from the automatic stay to proceed with the South Carolina Action, to adjudicate all relative rights and interests in the Aircraft and against the Debtor, and to exercise any and all rights and remedies against the Debtor and the Aircraft that are indicated or authorized by any judgment in the South Carolina Action.  In short, Movants seek a complete termination of the automatic stay as to the Estate, the Debtor, and the Aircraft and an annulment of the stay.

22.    Alternatively, Movants request that the Trustee provide Movants with adequate protection of their interests in the Aircraft.

## Basis for Relief

23.    The relief sought is warranted under § 362(d)(1) and (2) of the Bankruptcy Code, which provides in pertinent part as follows:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay:

5

> (1) for cause, including the lack of adequate protection of
> an interest in property of such party in interest; or
> (2) with respect to a stay of an act against property under
> subsection (a) of this section, if:
>> (A) the debtor does not have an equity in such property;
>> and
>> (B) such property is not necessary to an effective
>> reorganization. . .

24.     Under section 362(d)(2) the court is required to lift the stay affecting a debtor's property if "the debtor does not have an equity" in the property and the property "is not necessary to an effective reorganization." Once a creditor demonstrates those two things, it is entitled to relief. *In re Bagwell,* 741 Fed. Appx. 755, 759 (11th Cir. 2018), *citing*, *In re Albany Partners, Ltd.*, 749 F.2d 670, 673 (11th Cir. 1984).

### The Estate Has No Equity In its Interest in the Aircraft

25.     Simple math demonstrates that the estate has no equity in the Aircraft. As of December 5, 2019, the Debtor and thus the estate appears to have had at most, a 17.263% interest in an uninsured, uninsurable, non-airworthy Aircraft.

26.     The estimated value of the entire Aircraft as of the Petition Date is between $400,000 and $1,000,000, not considering any claims or liens. The value of the Debtor's (i.e., the estate's) interest in 17.263% of the Aircraft would be between $68,000 and approximately $170,000. Movants are unaware of any facts to suggest that the value of the Debtor's interest in the Aircraft has increased.

27.     The total amount of liens asserted by the Trust is $2.7 million. Other creditors have asserted secured claims in excess of $1,000,000. The Debtor's/estate's purported 17.263% ownership interest is hopelessly under-secured and provides no equity to the estate.

**The Aircraft is Not Necessary to an Effective Reorganization**

28.    To keep the stay in place when there is no equity in the subject property, the Trustee must show that the property  is "necessary to an effective reorganization."  11 U.S.C. § 362(d)(2)(B).  The Chapter 7 Trustee must "demonstrate[s] that an effective reorganization is realistically possible; the mere fact that the property is indispensable to the debtor's survival is insufficient." *In re Bagwell,* 741 Fed. Appx. 755, 759 (11th Cir. 2018).

29.    The Aircraft is not necessary for an effective reorganization. This is a Chapter 7 liquidation case.  The Debtor has no intention of and no possibility of a reorganization.

**Relief is Proper for Cause, Including Lack of Adequate Protection**

30.    Relief from the automatic stay is also proper under 11 U.S.C. § 362(d)(1) for "cause."  What constitutes cause is based on the facts of each case, but includes the failure of the estate to provide a secured creditor with "adequate protection" of the creditor's interest in the subject collateral.

31.    Current conditions indicate that the value of the Aircraft is declining.  It is exposed to the elements, in need of repairs, and currently uninsured if not uninsurable.  Holland Dec.at ¶¶ 14-15.  "Adequate protection is necessary when the value of the collateral at the time of the petition is depreciating or declining. However, where instances arise with a potential for damage to the property, resulting in a decline in value, the Court may require protection against such loss. "  *See In re Beegle,* 11-13716-WHD, 2012 WL 4894583, at *2 (Bankr. N.D. Ga. Sept. 28, 2012).

32.    The Debtor has stated that it has no cash on hand.  It is not operating.  As of the date of the meeting of creditors, the Debtor was unable to find enough cash to pay its cloud-storage vendor to release the Debtor's books and

records. It appears that the Debtor's the estate has no assets with which to purchase insurance for the Aircraft, if indeed insurance could be obtained.

33.     The Trustee has not offered or provided the Trust or MMT with adequate protection of their interests in the Aircraft. At a minimum, the Trustee would need to insure the Aircraft and pay to have it stored inside a hangar. The Trustee has not done so and does not appear to have sufficient assets with which to proceed.

34.     Although this is not a Chapter 11 case, the policies behind 11 U.S.C. § 1110 that condition the continued possession and use by a debtor in possession of aircraft and certain aircraft parts on the debtor's or the trustee's agreement to pay for and keep current lease and financial obligations related to the aircraft reflect the special nature of aircraft.  Keeping aircraft maintenance current is essential for airworthiness, and where the debtor is unable to keep the aircraft airworthy, the aircraft should be released to  creditors.

In light of the foregoing, the Trust and MMT request that the Court

a.  Grant this Motion;

b.  Annul the Automatic Stay imposed by Section 362 of the Bankruptcy Code with respect to the Trust's and MMT's filing of the South Carolina Action and service of the parties;

c.  Terminate the automatic stay imposed by Section 362 of the Bankruptcy Code with respect to the Aircraft and with respect to the Debtor in the South Carolina Action;

d.  Alternatively, modify the automatic stay imposed by Section 362 of the Bankruptcy Code to authorize the Trust, MMT, and all other parties to fully participate in, resolve, bring to final judgment, and if necessary, appeal any judgment or order in the South Carolina Action, and to exercise any and all rights and remedies against the Debtor or the

Aircraft permitted or authorized by any judgment in the South Carolina Action;

e.  Order that the 14-day stay of such order provided by Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure shall not apply; and

f.  Grant all other and further relief as the Court deems just and proper.

This 8th day of June 2020.

                    */s/ Lydia M. Hilton*
Lydia M. Hilton
Georgia Bar No. 001810
lhilton@bfvlaw.com

Berman Fink Van Horn, P.C.
3475 Piedmont Road, Suite 1100
Atlanta, Georgia  30305
Ph:  404.261.7711
Fax: 404.233.1943

*Counsel for The Holland Family Trust and MMT, LLC*

**Certificate of Service**

I certify that I filed the foregoing **Motion of Mason Holland, as Trustee for The Holland Family Trust, and MMT, LLC for Relief from the Automatic Stay, or Alternatively for Adequate Protection** using this Court's electronic filing system, which will automatically serve registered users at the email addresses below, OR where no email address is indicated (bold), by US Mail, First Class postage prepaid.

**Ascension Air Management, Inc.**
**Attn:  Jamail Larkins**
**2447 Field Way NE**
**Atlanta, GA  30319-4094**

Counsel for Debtor
Mike Robl, Esq.
3754 LaVista Road
Suite 250
Tucker, GA 30084
michael@roblgroup.com

S. Gregory Hays
Chapter 7 Trustee:
Suite 555
2964 Peachtree Road, NW
Atlanta, GA 30326-1085
ghays@haysconsulting.net

Counsel for Trustee
Michael J. Bargar
Arnall Golden Gregory, LLP
Suite 2100
171 17th Street, N.W.
Atlanta, GA 30363
michael.bargar@agg.com

**Aero Specialty**
**18216 Edison Avenue**
**Chesterfield, MO 63005**

Darrell Mays
c/o John Monahon Esq.
Ste 500, 400 Colony Sq.
1202 Peachtree
Atlanta, GA 30361
jmonahon@trusted-counsel.com

**IRS**
**Cincinnati, OH 45999-0038**

**United States Attorney**
**Northern District of Georgia**
**75 Ted Turner Drive SW, Suite 600**
**Atlanta GA 30303-3309**

**Jamail Larkins**
**2447 Field Way NE**
**Atlanta, GA 30319**

**John Probst**
**371 Clear Spring Ct**
**Marietta, GA 30068**

**Multi Service**
**8600 West 100th St**
**Overland Park, KS 66210**

**Region Capital**
**323 Sunny Isles Blvd Suite 501**
**North Miami Beach, FL 33160**

Air Columbia, LLC
Air J.P., LLC
Jonathan A. Akins
Schreeder, Wheeler & Flint, LLP
Suite 800
1100 Peachtree Street NE
Atlanta, GA 30309
jakins@swfllp.com

**Triple T Holdings, Inc.**
**Alan Armstrong**
**2900 Chamblee Tucker Road**
**Building 5, Ste. 350**
**Atlanta, GA 30341-4100**

BPAJRNEA Aviation, LLC
Graham Keith Brantley
James C. Joedecke, Jr.
Anderson Tate & Carr, P.C.
Suite 4000
1960 Satellite Blvd.

Duluth, GA 30097
gbrantley@atclawfirm.com
jjoedecke@atclawfirm.com

Executive Visions
John M. McGovern
McGovern Law Firm
7000 Miller Court East
Norcross, GA 30071
jmcgovern@mcgovernfirm.com

Sutlive Aviation, LLC
TURNER PADGET GRAHAM &
LANEY, P.A.
Robert P. Mangum
PO Box 1495
209 Seventh Street, Third Floor
Augusta, GA 30903
rmangum@turnerpadget.com

CLBD Real Estate Holdings, LLC
Louis G. McBryan
McBryan, LLC
Building B-3, Suite 100
6849 Peachtree Dunwoody Road
Atlanta, GA 30328
lmcbryan@mcbryanlaw.com

This 8th day of June 2020.

        /s/ Lydia M. Hilton
Lydia M. Hilton
Georgia Bar No. 001810
lhilton@bfvlaw.com

Berman Fink Van Horn, P.C.
3475 Piedmont Road, Suite 1100
Atlanta, Georgia 30305
Ph:  404.261.7711
Fax: 404.233.1943

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| **In re:** | ) | Case No. 20-62473-pmb |
| | ) | |
| **Ascension Air Management, Inc.** | ) | Chapter 7 |
| | ) | |
| *Debtor.* | ) | Judge Baisier |
| | ) | |
| Mason Holland, as Trustee for the | ) | |
| Holland Family Trust, and MMT, LLC, | ) | **Contested Matter** |
| | ) | |
| *Movants,* | ) | |
| v. | ) | |
| | ) | |
| S. Gregory Hays, as Chapter 7 Trustee, | ) | |
| | ) | |
| *Respondent.* | ) | |

**Declaration Under 28 U.S.C. §1746 of Mason Holland
In Support of Motion for Relief from the Automatic Stay,
or Alternatively Adequate Protection**

I, Mason Holland ("Declarant"), make the following declaration under 28
U.S.C. §1746 in support of the Motion of Mason Holland, as Trustee for The Holland
Family Trust, and MMT, LLC for Relief from the Automatic Stay, or Alternatively
for Adequate Protection (the "Motion") under penalty of perjury and state that the
following is true and correct based on my personal knowledge:

1.    I am over the age of 21 years and am competent to make this
Declaration.

2.    I reside at 301 Hammock Lane, Charleston South Carolina 29492.

3.    I am the Trustee for the Holland Family Trust (the "Trust"), which was

1

Exhibit A, Page 1 of 4

set up by an instrument dated January 2004.

4.    MMT, LLC is a limited liability company organized under the laws of South Carolina. MMT, LLC is an entity established for the purchasing and operating of aircraft. I, Mason Holland, am the sole member of the LLC.

5.    I have been in business for 35 years managing financial assets and am the founder of several business ventures one of which I founded in 2000 and lead a public offering in 2013, of which I am still Executive Chairman. In 2009, I lead a successful effort to purchase the manufacturing assets and production certificate of the prior assets of Eclipse Aviation Corporation in a bankruptcy proceeding. As a result of obtaining those assets in September 2009, I served as the founder, CEO and Board Chairman of the newly formed Eclipse Aerospace, Inc. During this time, I personally oversaw the purchase, trading, and production of over 60 Eclipse Jet aircraft both new and used around the world. In addition, I am a commercial rated licensed pilot.

6.    On or about October 2014, while I was the lead shareholder and Chairman of Eclipse Aerospace, Inc., Ascension Air Management, Inc. (the "Debtor") purchased an EA500 aircraft with Tail Number N826ES and Serial Number 550-0282 ("Aircraft"). At the time of the purchase, Mr. Jamail Larkins represented that he was the Debtor's President.

7.    Eclipse financed the Debtor's purchase of the Aircraft with a first priority, purchase money security interest in the Aircraft. I know this because I was involved and approved the transaction.

8.    On or about August of 2016, as part of a separate transaction, Eclipse Aerospace sold the first priority, purchase money security interest in the Aircraft to Holland Family Trust.

9.    To date, the original note and obligation made by Ascension Aircraft to purchase the Aircraft has not been paid and is still outstanding; therefore, the original manufacturer and the subsequent note holder (Holland Family Trust) of the

2

Exhibit A, Page 2 of 4

first priority note was never paid the full consideration for the purchase.

10.    In addition, as part of a separate and distinct transaction in late 2019, MMT purchased a 5% equity interest in the Aircraft. This equity interest is "behind" the debt interest owed to Holland Family trust and valued at zero.

11.    As Trustee of the Trust and with the assistance of my in-house CFO who also is a Certified Public Accountant, I cause the books and records to be kept of all the assets and liabilities of the Trust. I keep (or have access to) the books and records of the Trust and have reviewed all the accounts related to the obligation the Debtor owes the Trust.

12.    As of March 1, 2020, the Debtor owed the Trust $2,117,436 in principal, plus $651,068.06 of accrued interest, for a total of $2,768,504.06. Interest continues to accrue. In fact, the Debtor made only one payment on September 30, 2016, which reduced principal by $100,000 and paid $73,813.28 of interest.

13.    On February 14, 2020, unaware the Debtor had filed bankruptcy, the Trust and MMT filed suit in the Court of Common Pleas for the Ninth Judicial Circuit of South Carolina against the Debtor, the Debtor's principal S. Jamail Larkins, and others to quiet title to the Aircraft and to foreclose the Trust's security interest in the Aircraft (the "South Carolina Action").

14.    The Aircraft is in Charleston, South Carolina, currently outside, not in a hangar.  Considerable repairs are needed (about $50-$100K) to get it airworthy. This repair cost estimate is based on my experience in overseeing the manufacturing of the plane when it was built in 2014, as well as the cost of known parts provided by third-party suppliers, needed to again return the aircraft to an airworthy status.

15.    I have attempted to acquire insurance on the Aircraft.  Based on the information I have received, I understand that insurance coverage, if it is even available for an aircraft that is not airworthy, would run $15,000-$20,000 (although normally it would be $12,000 to $14,000). Since title to and possession of the aircraft still remains with Ascension Air. I am unable to provide adequate documentation to

Exhibit A, Page 3 of 4

obtain insurance to protect the asset.

16.    As Trustee of the Trust, I ordered a title report to determine who is identified in the public records as having an interest in the Aircraft.  A copy of that report is attached hereto as Exhibit A. According to this report, the Debtor holds a 17.263 percent interest in the Aircraft.

17.    I am familiar with VREF reports and understand them to be an aviation "Blue Book" that provides ranges of prices and market values for aircraft being sold. I have been involved in the aircraft industry for 20 years and believe that it provides a generally accepted and reliable source of information about the estimated value of aircraft being offered for sale.

18.    Based on my experience, my inspection of the Aircraft, my understanding of the repairs needed to get the Aircraft airworthy, I believe that the Aircraft has an estimate as-is value of approximately $400,000 to $1,000,000.

19.    The Chapter 7 Trustee has not offered to insure the estate's interest in the Aircraft. I have been advised that in its current condition, the plane is not insurable.

20.    Time is of the essence as my clear right to collect on the collateral is being damaged daily. A duty to either release any claim to the Aircraft or properly insure care and maintain the collateral rests with the Debtor.

I declare under penalty of perjury that the foregoing is true and correct. Executed on _____June   5_____, 2020.

Mason Holland, Trustee for the The Holland Family Trust

4



# Insured Aircraft Title Service, Inc.

| N Number: | N826ES |
|---|---|
| Make/Model: | ECLIPSE AEROSPACE INC EA500 |
| Serial Number: | 550-0282 |
| Engines: | |
| Propellers: | |
| Fees attached: | $5.00 |

Date:    July 7, 2016

FAA Aircraft Registry                    FILING TIME
Oklahoma City, OK

Dear Gentleman or Madam,

    If there are any problems with the attached filed documents, please advise the undersigned or return to:

                Insured Aircraft Title Service, Inc.
                Public Documents Room
                Attention:  Bill Morgan

Do not return the documents to the lending institution, or to the customer indicated, as we are filing the documents at their request.

                Sincerely,

                Bill Morgan
                Documents Specialist

FILED WITH FAA
AIRCRAFT REGISTRATION BR
2016 JUL -7 P 3: 03
OKLAHOMA CITY
OKLAHOMA

Exhibit B, Page 1 of 10

COPY

## AIRCRAFT LOAN AND SECURITY AGREEMENT

This **AIRCRAFT LOAN AND SECURITY AGREEMENT** ("Agreement") is made as of the 16th day May, 2016, by and between **ASCENSION AIR MANAGEMENT, INC.,** ⃰ a Georgia Corporation with its principal place of business is located at 2007 Flightway Drive, Atlanta, Georgia 30341 (the "Borrower") and **HOLLAND FAMILY TRUST**, with its principal place of business located at 125 Fairchild Street, Suite 100, Charleston, South Carolina 29492 (the "Lender").

⃰ mortgaging its 94.333 % only

### Recitals

A. Eclipse Aerospace, Inc. ("EAI") loaned funds in the amount of Two Million Two Hundred Thousand Four Hundred Thirty-Six and 00/100 Dollars (**$2,217,436.00**) to Ascension Air Management, Inc. for the purpose of purchasing an EA500 aircraft (N826ES/Serial No. 550-0282).

B. EAI filed a lien (Conveyance No. JP015852) with the Federal Aviation Authority on December 11, 2015 and re-filed a lien on January 6, 2016 that was then released on May 17, 2016 (the "FAA Lien").

Now, therefore, Borrower and Lender hereby agree to these Recitals and the following:

### Agreement

1.   Loan Terms. In consideration of Lender satisfying the obligation of $2,217,436.00 with EAI at execution hereof, the Borrower promises to pay the Lender the sum of Two Million Two Hundred Thousand Four Hundred Thirty-Six and 00/100 Dollars (**$2,217,436.00**) under the following terms (the "Loan"):

   (a) Single Payment. Full amount due in one payment on or before December 31, 2016, plus interest payable as set forth;

   (b) Interest Calculation. Interest shall be set at the annual fixed rate of 9.0% (the "Interest Rate"); *provided, however*, if:

   i.   Borrower repays $1,650,000.00 on or before **July 31, 2016**, then the interest rate applied to the origination date of this Agreement shall be only the minimum Applicable Federal Rate of 0.67% and Lender shall extend the balance of the Note at the Interest Rate to a maturity date that is equal to the remaining warranty on the EA500 N826ES/Serial No. 550-0282; or

   ii.  Borrower repays after July 31, 2016, but before **September 30, 2016**, then the interest rate applied shall be six percent (6.0%) calculated from the Effective Date of this Agreement to the date of payment and Lender shall extend the balance of the Note at the Interest Rate to a maturity date that is equal to the remaining warranty on the EA500 N826ES/Serial No. 550-0282.

   iii. Borrower repays after September 30, 2016, but before **December 31, 2016**, then the interest rate applied shall be nine percent (9.0%) calculated from the Effective Date

1

ORIGINAL DOCUMENT
FILED AT THE F.A.A. BY
I.A.T.S.
DATE: 7-7-16 TIME: 3:03 Pm CDT

of this Agreement to the date of payment and Lender shall extend the balance of the Note at the Interest Rate to a maturity date that is equal to the remaining warranty on the EA500 N826ES/Serial No. 550-0282.

(c) <u>Prepayment.</u> Prepayment shall be permitted any time.

(d) <u>Note Due On Sale of Aircraft.</u> If the Aircraft is sold at any time prior to repayment of Principal, then Maturity Date shall be accelerated to the date of such sale and this Note shall be immediately due and payable.

(e) The Note is due and payable in full immediately and without notice at anytime after the aircraft (EA500 N826ES/Serial No. 550-0282) reaching 300 hours of service.

2.      <u>Grant of Security Interest.</u> The Borrower hereby grants Lender a security interest in all of its right, title and interest in and to the following personal property whether now owned or hereafter acquired by Borrower and wherever located (collectively, the "Collateral"):

(a) Airframe Description:

| Manufacturer | Model | FAA Registration No. | Serial No. |
|---|---|---|---|
| Eclipse Aerospace Inc | EA 500 | N826ES | 550-0282 |

Unless specifically described below, the foregoing airframe includes any aircraft engines and avionics that are installed thereon either now or hereafter acquired in the future.

(b)     <u>Related Equipment.</u> All avionics, parts, spare parts, equipment, appliances, accessories, and accessories relating to, affixed to or used in conjunction with the above described airframe including, but not limited to, the radio, radar, navigation systems and other electronic equipment attached thereto and made a part thereof.

(c)     <u>Log Books.</u> All engine and airframe log books, maintenance records and all airworthiness certificates relating to the airframe and engine(s) described above (all of which property described in Paragraph 1.A. through D. is hereinafter collectively called the "Aircraft").

(f)     <u>Proceeds.</u> All proceeds of every kind and nature of any of the foregoing Collateral ("Proceeds") including, but not limited to, all replacements thereof and substitutions therefor, all payments under insurance (whether or not Lender is loss payee under the policy), any indemnity, warranty or guaranty payable by reason of loss or damage to the Aircraft, and any payments under a lease or rental agreement with respect to the Aircraft (whether contrary to the terms of this Agreement or with the consent of Lender).

3.      <u>Indebtedness Secured.</u> Borrower hereby grants Lender the foregoing continuing security interest in the Collateral to secure the repayment of the Loan (including all renewals, re-financings, and extensions thereof) and any and all other obligations of any and every kind and nature heretofore, now, or hereafter owing from Borrower to Lender and however incurred or evidenced, whether primary, secondary, contingent or otherwise, whether arising under this Agreement or under any other security agreements, promissory notes, guaranties, mortgages, leases, instruments, documents, contracts or agreements heretofore, now, or hereafter executed by Borrower (hereinafter collectively called the "Liabilities") together with all interest, costs and expenses and reasonable attorneys' fees made or incurred by Lender in the disbursement, administration, and collection of the Liabilities, and in the protection, maintenance, and liquidation of the Aircraft, including without

2

limitation all of Lender's costs and expenses incurred in locating or repossession of the Aircraft, returning the Aircraft to the location designated by the Lender, and all costs of repairing, rehabilitating, insuring and storing the Aircraft.

4.    Representations and Covenants. Borrower represents and, until the Liabilities are paid in full, covenants as follows:

(a)    Recitals. The statements made in the recitals to this agreement are true and correct and will continue to remain true and correct until the Borrower notifies Lender in writing to the contrary.

(b)    Citizenship. Borrower qualifies in all respects as a citizen of the United States as defined in the Federal Aviation Act of 1958, as amended (the "Act") and the Aircraft is not currently registered and will not be registered in the future under the laws of any other country.

(c)    Borrower's Existence and Authority. To the extent Borrower is a legal entity, it is in good standing or otherwise registered and validly existing under the laws of the state referenced after its name on the first page of this Agreement and the person(s) executing this Agreement on behalf of Borrower has full power and complete authority to execute this Agreement, the Loan, and all other related documents.

(d)    Financial Information. All financial information provided by Borrower to Lender fully and fairly presents the financial condition of the Borrower, and since the date of the Borrower's latest financial statements provided to Lender, there has been no material adverse change in Borrower's business, property, or condition (financial or otherwise). Borrower will provide, upon the request of Lender, such financial statements and information as reasonably requested by Lender.

(e)    Title and Encumbrances. Borrower is (or, after disbursement of the Loan proceeds in accordance with Borrower's directions, will be) the beneficial owner of the Aircraft holding title to the Aircraft, free and clear of any liens or encumbrances other than the security interest granted to the Lender under this Agreement. Borrower will keep the Aircraft free and clear of any and all non-Lender security interests, liens, and claims of any and every kind and immediately advise Lender in writing of the commencement of any proceeding, action, suit, claim or occurrence concerning the Collateral or which affects or may affect Borrower's continued possession of the Aircraft.

(f)    No Litigation. There are no suits or proceedings pending before any court, government agency, arbitration panel, or administrative tribunal (or, to Borrower's knowledge, threatened against Borrower) which may result in any material adverse change in the business, property or condition of Borrower (financial or otherwise).

(g)    Taxes. Borrower has filed all federal, state and local tax returns which Borrower is required by law to file, and all such taxes are current and have been paid in full.

(h)    No Violations. Borrower's execution of this Agreement, and all related documents and agreements pertaining to the Loan or the Liabilities does not violate nor constitute a breach of Borrower's articles of incorporation or bylaws (if Borrower is a corporation), operating agreement (if Borrower is a limited liability company) or partnership agreement (if Borrower is a partnership) nor does Borrower's execution of the Loan, this Agreement and such related

documents and agreements constitute a breach of any other agreement to which Borrower is a party or to which it is subject.

(i)      Business Purpose. Borrower represents that the Loan proceeds and the Collateral have not and will not be used for primarily personal, family or household purposes. If Borrower is a natural person, the Borrower does not consider and will not consider the Aircraft a dwelling, as such term is defined under Regulation Z issued by the Board of Governors of the Federal Reserve System to implement the Federal Truth in Lending Act (15 U.S.C. 1601 et seq.).

(j)      No Sale or Lease. Notwithstanding Borrower's grant of a security interest in the Proceeds, Borrower will not sell or lease or otherwise transfer the Aircraft or any parts thereof to any other person, party or entity, for any purpose without the prior written consent of Lender. Lender is aware that Borrower shall sell fractional lease or use interest, but title to the Aircraft shall remain in Borrower's name. Borrower shall be permitted to establish an escrow to hold the related bill of sale applicable to each purchaser to be released upon payment in full of the Loan.

5.      Additional Covenants. Until the Liabilities are paid in full, Borrower shall:

(a)      Aircraft and Logbook Maintenance. Maintain, service, repair, overhaul, and test the Aircraft so as to keep the Aircraft in good operating condition and at all times in such operating condition as is necessary to enable the airworthiness certification of the Aircraft to be maintained in good standing under the Act and maintain or cause to be maintained all records, logs, and other materials required to be maintained on the Aircraft by the Federal Aviation Administration (the "FAA").

(b)      Aircraft Damage. Immediately inform the Lender, in writing, of any damage to, destruction of or confiscation of the Aircraft or any part thereof.

(c)      Inspection of Aircraft. Permit or authorize the Lender or its agents to inspect the Aircraft and copy Borrower's records pertaining thereto including, but not limited to, the Aircraft's log books and maintenance records.

(d)      Compliance With Law. At all times to strictly observe, obey, and comply with all applicable federal, state, and local statutes, ordinances and regulations, including by illustration, but not limitation, the Act and the FAA regulations, rules and orders promulgated thereunder.

(g)      Insurance.

(i)      Borrower shall at all times, at its own expense, maintain in effect the following casualty insurance for an amount not less than the amount financed by the Lender with insurers satisfactory to Lender and rated B+ or better by Best's Rating Service: (A) Aircraft Hull All Risks Insurance covering both ground and flight exposure (including any engine and propeller when not installed) in all geographical areas in which the Aircraft will be operated; and (B) if the Borrower may, in the judgment of Lender, operate the Aircraft outside the continental United States, appropriate Hull War Risks and Allied Perils Insurance (including, without limitation, hijacking, air piracy, confiscation, and expropriation by governments). All such casualty policies shall (1) name the Lender as loss payee under a standard loss payable clause; (2) provide that if the insurer(s) cancel such insurance for any

4

reason whatsoever, or if the same is allowed to lapse for nonpayment of premium, the insurer(s) shall give Lender not less than thirty (30) days [ten (10) days with respect to War Risk coverage] advance written notice of such cancellation or lapse; and (3) provide that with respect to the interest of Lender, the insurance afforded shall not be invalidated by any action or neglect of the Borrower whether or not such act or neglect is a breach or violation of any warranties, declarations or conditions contained in such policies.

(ii) Borrower shall further maintain, at its own expense, Aircraft Liability and Comprehensive General Liability insurance naming both Borrower and Lender as insured parties. The provisions of such liability insurance policies shall apply separately to each insured against whom claim is made or suit is brought except with respect to limits of liability. Borrower shall not use or permit the Aircraft to be used for any illegal purpose or in a manner for which the Aircraft becomes uninsured.

(iii) Borrower shall either deliver to the Lender the policies required herein or shall arrange for delivery to Lender of appropriate certifications from insurance underwriters of recognized standing certifying to Lender that the insurance coverage required under this Agreement are in effect.

(iv) The Lender is hereby appointed attorney-in-fact for the Borrower with respect to any and all insurance policies covering the Aircraft, whether or not Lender is named as loss payee in such policies, to make proof of loss, settle or compromise claims, and to receipt for any sums collected under such policies. Borrower shall not adjust, settle, or compromise any loss or claim with Borrower's insurance carrier without the prior written consent of the Lender. Any injury to or loss of the Aircraft from whatever cause shall not release Borrower from the payment of any Liabilities. If Borrower at any time fails to obtain or maintain the insurance coverage required above or pay any insurance premium due, the Lender, without waiving or releasing the default of Borrower hereunder, may at any time (but without obligation to do so) make such payment and obtain and maintain such policies of insurance, pay such premiums, and take such action with respect thereto as Lender deems advisable. All sums disbursed by Lender pertaining to the Aircraft, including but not limited to insurance premiums, attorneys' fees, court costs, expenses, and all other fees, charges, costs, and expenses relating thereto, shall be part of the Liabilities secured hereby and shall be payable upon demand, and upon nonpayment by Borrower shall bear interest at the highest interest rate specified in the Loan.

6.  Default.

(a)       Events of Default. Upon the occurrence of an Event of Default, as defined in this Agreement, Lender shall be entitled to exercise all of its legal rights and remedies, including the right to immediate possession of the Collateral. Borrower agrees, in case of default, to make the Collateral available at its expense, at a place acceptable to the Lender. Notification of intended disposition of the Collateral shall be deemed reasonably and properly given if sent at least ten (10) days before such disposition to Borrower and any guarantor at their last known address. The Lender may comply with any applicable state or federal law requirements in connection with a disposition of the Collateral and compliance therewith will not be considered to adversely affect the commercial reasonableness of any sale of the Collateral. The proceeds of sale will be applied to the reasonable expenses of retaking, holding, preparing for disposition, processing and disposing of the Collateral and, to the extent permitted by law, the Lender's reasonable attorney's fees and legal expenses. All remaining proceeds will be applied to the Liabilities. If any money is left over

(surplus) then, subject to the rights of the holder of a subordinate security interest or lien, it will be paid to Borrower. Borrower agrees to pay all of Lender's costs of collection of the Loan and the Liabilities and enforcement of the Lender's rights hereunder, including reasonable attorneys' fees. In case of any deficiency upon sale of the Collateral, Borrower shall immediately pay such deficiency to the Lender.

     (b)   <u>Default and Enforcement.</u> Upon the occurrence of any one or more of the following Events of Default:

     (i)   Borrower fails to pay any amount when due under the Loan or under any other instrument evidencing any indebtedness of Borrower to Lender;

     (ii)   any representation or warranty made under this Agreement or information provided by Borrower to Lender in connection with this Agreement is or was false or fraudulent in any material respect;

     (iii)   a material adverse change occurs in Borrower's financial condition;

     (iv)   Borrower fails to timely observe or perform any of the covenants or duties contained in this Agreement;

     (v)   any guarantee of Borrower's obligations under this Agreement is revoked or becomes unenforceable for any reason;

     (vi)   Borrower, or a surety or guarantor of the Loan dies or ceases to exist; or

     (vii)   Lender at any time believes in good faith that the prospect of payment or performance under this Agreement, under any other instrument evidencing any indebtedness of Borrower to Lender or under any agreement securing this Loan is impaired, then the unpaid balance shall, at the option of Lender, without notice, mature and become immediately payable.

The unpaid balance shall automatically mature and become immediately payable in the event any Borrower or any surety, indorser or guarantor for any of Borrower's obligations under the Loan becomes the subject of bankruptcy or other insolvency proceedings. Lenders receipt of any payment on the Loan after the occurrence of an Event of Default shall not constitute a waiver of the default or the Lender's rights and remedies upon such default.

7.   <u>Indemnification.</u> Borrower agrees to at all times indemnify the Lender and its directors, officers, employees and agents, from and against any and all liabilities, obligations, losses, damages, penalties, actions, suits, costs, legal fees, expenses, and disbursements of any and every kind and nature as are imposed on, incurred by, or asserted against the Lender, its directors, officers, employees and agents which in any way arise out of or are related to the Aircraft and any other item of Collateral, the transactions contemplated hereby, or the use, possession, maintenance, operation, conditions, sale registration, ownership, lease or other disposition of the Aircraft and any other item of Collateral, including, without limitation, any and all claims or penalties arising from any violation of the laws of any country or political subdivision thereof and any loss of or damage to any property or the death or injury of any person.

8. <u>Miscellaneous.</u>

(a) <u>Governing Law</u>. Borrower consents and agrees that any legal proceeding brought by the Lender against Borrower with respect to the Loan and this Agreement or the Liabilities, may be brought in any South Carolina court of competent jurisdiction, and Borrower hereby irrevocably accepts and consents with regard to any such action or proceeding, to both the jurisdiction of the aforesaid courts and venue therein. This Agreement has been delivered in South Carolina, and shall be construed in accordance with the laws of the State of South Carolina. Whenever possible each provision of this Agreement shall be interpreted in such manner as to be effective and valid under all applicable law, but if any provision of this Agreement shall be prohibited by or invalid under applicable law, such provision shall be void or ineffective to the extent of such prohibition or invalidity only, without invalidating the remainder of such provision or the remaining provisions of this Agreement. The rights and privileges of the Lender hereunder shall inure to the benefit of its successors and assigns and this Agreement shall be binding on all successors and assigns of Borrower, but this Agreement is not assignable by Borrower.

(b) <u>Interpretation</u>. Except as otherwise defined in this Agreement, all terms in this Agreement shall have the meanings provided by the Act, rules, and regulations, and by the South Carolina Uniform Commercial Code as either is amended from time to time. Lender may file a photographic copy of this Agreement for use as a financing statement. Any delay on the part of the Lender in exercising any power, privilege, or right hereunder, under the Loan, or under any other instrument or agreement executed by Borrower, shall not operate as a waiver thereof, and no single or partial exercise or the exercise of any other power, privilege, or right shall preclude other or further exercise thereof, or the exercise of any other power, privilege or rights.

(c) <u>Waiver</u>. The Borrower (i) waive(s) presentment, diligence, protest, demand, notice of demand, notice of acceptance or reliance, notice of non-payment, notice of dishonor, notice of protest and all other notices to parties in connection with the delivery, acceptance, performance, default or enforcement of this Note; and (ii) consent(s) to any and all delays, extensions, renewals or other modifications with respect to this Note, any related document or the debt(s) evidenced hereby or thereby or any waivers of any term hereof or thereof, any release, surrender, taking of additional, substitution, exchange, failure to perfect, record, preserve, realize upon, or lawfully dispose of, or any other impairment of, any collateral or other security, or any other failure to act by the Lender or any other forbearance or indulgence shown by the Lender, from time to time and in one or more instances and agrees that none of the foregoing shall release, discharge or otherwise impair any of their liabilities under or otherwise relating to this Note or any related agreement, instrument or other related document

(d) <u>Amendments to this Agreement</u>. This Agreement may only be modified by a written agreement which specifically refers to this Agreement and which is signed by the Lender, the Borrower and any other party charged with the changes expressed in such modification.

(e) <u>Notices</u>. Unless otherwise provided, any notice and other communications required or permitted under this Agreement shall be in writing and shall be mailed by United States first-class mail, postage prepaid, sent by facsimile or email (in each case with electronic confirmation) or delivered personally by hand or by a nationally recognized courier addressed to the party to be notified at the address indicated for such party above, or at such other address as such party may designate by ten (10) days advance written notice to the other parties hereto. All such notices and other written communications shall be effective on the

earlier of: (i) five (5) days from the date of mailing, (ii) confirmed facsimile transfer, or (iii) actual receipt by the party to be notified.

(f) <u>Attorneys' Fees</u>. Borrower shall pay the fees of counsel for Lender in an amount not to exceed $7,500, and such amount may be added to the Principal of the Note at the option of the Lender. If any action at law or in equity is necessary to enforce or interpret the terms of any of the Transaction Agreements, the prevailing party shall be entitled to reasonable attorneys' fees, costs and disbursements in addition to any other relief to which such party may be entitled.

(g) <u>Entire Agreement</u>. Borrower acknowledges and agrees with Lender that this Agreement, the Loan, and all of the other documents and agreements referenced herein are the entire agreement between the parties, and that there are no other agreements, written or oral, express or implied, and Borrower acknowledges receipt of a true and complete copy of this Agreement and such other documents, instruments, and agreements as Borrower shall have requested from Lender on or prior to the date of this Agreement.

(h) <u>Counterparts</u>. This Agreement may be executed in two or more electronic counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

(j) <u>Severability</u>. If one or more provisions of this Agreement are held to be unenforceable under applicable law, such provision shall be excluded from this Agreement and the balance of the Agreement shall be interpreted as if such provision were so excluded and shall be enforceable in accordance with its terms.

(l) <u>Further Assurances</u>. From and after the date of this Agreement, upon the request of any Lender or the Borrower, the Borrower and Lender shall execute and deliver such instruments, documents and other writings as may be reasonably necessary or desirable to confirm and carry out and to effectuate fully the intent and purposes of this Agreement.

[*Signature on following page*]

Exhibit B, Page 9 of 10

**IN WITNESS WHEREOF**, the parties have executed this Agreement on the date above written.

BORROWER:

**Ascension Air Management, Inc.**

By: _____

Jamail Larkins
President

LENDER:

**Holland Family Trust**

By: _____

Mason Holland
Trustee

[*Signature Page to AAM-HFT Loan and Security Agreement*]

9

# AIRCRAFT TITLE REPORT from FAA RECORDS SEARCH

**Account No.**      81021

**Phone No.** 843-693-7631

**For:** Holland Management Services Inc.
125 Fairchild St., Ste. 100
Charleston, SC 29492

Attn: Peter Cuneo



**Insured Aircraft Title Service, LLC**
P.O. BOX 19527      405-681-6663
OKLAHOMA CITY, OKLAHOMA 73144
TOLL FREE:   PHONE 800-654-4882

**RE:**   N/A

---

**FAA Records Search revealed the following TITLE information on the aircraft herein described.**

| | |
|---|---|
| **Object:** | N826ES |
| **Make:** | Eclipse Aerospace Inc. |
| **Model:** | EA500 |
| **Serial No.:** | 550-0282 |

**Record Owner:**
1. Ascension Air Management, Inc. - 17.263%
2. Sutlive Aviation, LLC - 8.33%
3. HT Eclipse, LLC - 11.11%
4. Traylor and Associates, LLC - 8.33%
5. Triple T Holdings, Inc. - 33.3%
6. Birdies Fly, LLC - 5.667%
7. Executive Visions, Inc. - 16%

**Address:** 2013 Flightway Drive, Atlanta, GA 30341

**Type:**   Co-owner          **Date Registered:**  4-18-19
**Title:**   Co-owner
**Signed By:**   Jamail Larkins as President of 1., W. Barry Sutlive as Manager of 2., Charles E. Taylor as Member of 3., Mark Traylor as Member of 4., Scott Glenden Traylor as President of 5., James Grien as Member of 6. and Jamail Larkins as Aviation Manager of 7.

**Acquired By:**   Bill of Sale
**Date:**   3-11-19          **Date Filed:**   3-18-19
**Recorded:**   4-18-19          **FAA Doc. #**   AB015236

**Previous Owner:**   Ascension Air Management, Inc. - 94.333% and James Stephen Grien - 5.66%
**Address:**   2007 Flightway Drive, Atlanta, GA 30341

**Date Registered:**   8-24-16

**Subject To:**   Security Agreement
**Dated:**   12-3-15          **Amount $** 1,000,000.00
**Filed at FAA:**   12-9-15          **Recorded:** 12-12-15   **FAA Doc. #**  JD010020
**Drawn By:**   Ascension Aircraft, LLC
**Address:**   2007 Flightway Dr., Chamblee, GA 30341

Exhibit C, Page 1 of 3

**AIRCRAFT TITLE REPORT from FAA RECORDS SEARCH**

Account No. 81021

Phone No. 843-693-7631

For: Holland Management Services Inc.
125 Fairchild St., Ste. 100
Charleston, SC 29492



Attn: Peter Cuneo

RE: N/A

---

| | |
|---|---|
| **In Favor Of:** | CLBD Real Estate Holdings, LLC |
| **Address:** | 3460 Moye Trail, Duluth, GA 30097 |

| | |
|---|---|
| **Subject To:** | Security Agreement |
| **Dated:** | 5-16-16     **Amount $** 2,217,436.00 |
| **Filed at FAA:** | 7-7-16     **Recorded:** 8-24-16    **FAA Doc. #** JC004433 |
| **Drawn By:** | Ascension Air Management, Inc. (as to their interest) |
| **Address:** | 2007 Flightway Drive, Atlanta, GA 30341 |
| **In Favor Of:** | Holland Family Trust |
| **Address:** | 125 Fairchild St., Ste. 100, Charleston, SC 29492 |

| | |
|---|---|
| **Subject To:** | Lien Assessment for Fuel and Ground Services |
| **Dated:** | 10-19-18     **Amount $** 643.70 |
| **Filed at FAA:** | 10-31-18     **Recorded:** 12-26-18    **FAA Doc. #** GR004865 |
| **Drawn By:** | Against: Aircraft, Ascension Air Management Inc. and North American Jet Charter Group LLC |
| **Address:** | 2007 Flightway Drive, Atlanta, GA 30341 |
| **In Favor Of:** | Claimant: Universal Weather and Aviation, Inc. |
| **Address:** | 1150 Gemini Street, Houston, TX 77058 |

| | |
|---|---|
| **Subject To:** | Lien Assessment for Fuel and Ground Services |
| **Dated:** | 10-19-18     **Amount $** 12,729.00 |
| **Filed at FAA:** | 10-31-18     **Recorded:** 12-26-18    **FAA Doc. #** GR004866 |
| **Drawn By:** | Against: Aircraft, Ascension Air Management Inc. and North American Jet Charter Group LLC |
| **Address:** | 2007 Flightway Drive, Atlanta, GA 30341 |

---

**Page 2 of 3**     **N826ES**     **Ser. No. 550-0282**     **Printed: Dec 5, 2019 11:54 AM**

Exhibit C, Page 2 of 3

# AIRCRAFT TITLE REPORT from FAA RECORDS SEARCH

Account No.    81021
Phone No. 843-693-7631

For: Holland Management Services Inc.
125 Fairchild St., Ste. 100
Charleston, SC 29492

Attn: Peter Cuneo



**Insured Aircraft Title Service, LLC**
P. O. BOX 19527    405-681-6663
OKLAHOMA CITY, OKLAHOMA 73144
TOLL FREE:    PHONE 800-654-4882

RE:    N/A

---

**In Favor Of:**    Universal Fuels, Inc.
**Address:**    1150 Gemini Street, Houston, TX 77058

---

File contains a copy of an original Notice of Lien dated 6-29-18, filed 7-5-18, in the amount of $8,113.79 against aircraft and Ascension Air Management, Inc., 2013 Flightway Dr., Atlanta, GA 30341 and the claimant is Michael A. Warde, address not given.

FAA letter dated 8-18-18 to Michael Warde, 6000 S.W. 8th St., Plantation, FL 33317 states the the Notice of Lien is being returned for correction to show the complete/correct description of the aircraft.

**This search is subject to the filings reflected on the records and index of collateral provided by the FAA and  Insured Aircraft Title Service assumes no responsibility as to the accuracy of said source, and does not guarantee, insure, or warrant that said FAA records and index of collateral are free of error.**

**Report Date:**    12/05/2019
7:29 a.m. Central
**INSURED AIRCRAFT TITLE SERVICE**

**By**    _____    **T. Morgan**

TM/ts    **Title Examiner**

**This title search DOES NOT include a search for registrations lodged at the International Registry of Mobile Assets.  If this collateral qualifies under the provisions of the Capetown Convention and Aircraft Protocol, a separate search should be obtained.**

---

ELECTRONICALLY FILED - 2020 Feb 14 10:21 AM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000825

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | FOR THE NINTH JUDICIAL CIRCUIT |
| COUNTY OF CHARLESTON | ) | |
| | ) | |
| MMT, LLC, and THE HOLLAND FAMILY | ) | |
| TRUST, by and through its Trustee, Mason | ) | Case No.: 2020-CP-10-_____ |
| Holland, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | **SUMMONS** |
| vs. | ) | |
| | ) | |
| ASCENSION AIR MANAGEMENT, INC., | ) | ***(Expedited Hearing Requested,*** |
| JAMAIL LARKINS, SUTLIVE AVIATION, | ) | ***Rule 57, SCRCP)*** |
| LLC, TRAYLOR AND ASSOCIATES, LLC, | ) | |
| HT ECLIPSE, LLC, TRIPLE T HOLDINGS, | ) | |
| INC., EXECUTIVE VISIONS, INC., CLBD | ) | |
| REAL ESTATE HOLDINGS, LLC, | ) | |
| UNIVERSAL WEATHER AND AVIATION, | ) | |
| INC., AND UNIVERSAL FUEL, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

YOU ARE HEREBY SUMMONED and required to answer the Complaint in this action, a copy of which is hereby served upon you, and to serve a copy of your answer to this Complaint upon the subscriber, at the address shown below, within thirty (30) days after service hereof, exclusive of the day of such service, and if you fail to appear and defend this action by answering the Complaint, judgment by default will be rendered against you for the relief sought in the Complaint.

### *[SIGNATURE PAGE TO FOLLOW]*

Exhibit D, Page 1 of 32

Respectfully submitted,

By: *s/Ellis R. Lesemann*
Ellis R. Lesemann (S.C. Bar No. 15315)
erl@lalawsc.com
Michelle A. Matthews (S.C. Bar No. 100685)
mam@lalawsc.com
LESEMANN & ASSOCIATES LLC
418 King Street, Suite 301
Charleston, SC 29403
(843) 724-5155

***Attorneys for Plaintiffs MMT, LLC, and the Holland Family Trust, by and through its Trustee Mason Holland***

February 14, 2020
Charleston, South Carolina

ELECTRONICALLY FILED - 2020 Feb 14 10:21 AM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000825

Exhibit D, Page 2 of 32

ELECTRONICALLY FILED - 2020 Feb 14 10:21 AM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000825

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | FOR THE NINTH JUDICIAL CIRCUIT |
| COUNTY OF CHARLESTON | ) | |
| | ) | |
| MMT, LLC, and THE HOLLAND FAMILY | ) | |
| TRUST, by and through its Trustee, Mason | ) | Case No.: 2020-CP-10-_____ |
| Holland, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **COMPLAINT** |
| vs. | ) | |
| | ) | |
| ASCENSION AIR MANAGEMENT, INC., | ) | ***(Expedited Hearing Requested,*** |
| JAMAIL LARKINS, SUTLIVE AVIATION, | ) | ***Rule 57, SCRCP)*** |
| LLC, TRAYLOR AND ASSOCIATES, LLC, | ) | |
| HT ECLIPSE, LLC, TRIPLE T HOLDINGS, | ) | |
| INC., EXECUTIVE VISIONS, INC., CLBD | ) | |
| REAL ESTATE HOLDINGS, LLC, | ) | |
| UNIVERSAL WEATHER AND AVIATION, | ) | |
| INC., AND UNIVERSAL FUEL, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

COME NOW Plaintiffs MMT, LLC, and the Holland Family Trust, by and through its

Trustee Mason Holland, by and through their undersigned counsel, and states their Complaint for

Foreclosure of against Defendants as follows:

## PARTIES AND JURISDICTION

1.      Plaintiff MMT, LLC ("MMT") is a limited liability company organized and

existing under the laws of the State of Delaware that has its principal place of business in

Charleston County, South Carolina. MMT has a partial ownership interest in certain personal

property located in Charleston County, South Carolina, specifically an Eclipse Aviation EA500

aircraft with Tail Number N826ES and Serial Number 550-0282 (the "Aircraft").

2.      Plaintiff the Holland Family Trust, by and through its Trustee, Mason Holland

("HFT"), holds a perfected and senior security interest in the Aircraft, based on the terms of an

ELECTRONICALLY FILED - 2020 Feb 14 10:21 AM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000825

Aircraft Loan and Security Agreement dated May 16, 2016, and filed with the Federal Aviation Administration ("FAA") on July 7, 2016 ("Aircraft Loan and Security Agreement").

3.      Defendant Ascension Air Management, Inc. ("Ascension") is a Georgia corporation that has held a partial ownership interest in the Aircraft and is the debtor under the Aircraft Loan and Security Agreement that this action has been filed to enforce.

4.      Defendant Jamail Larkins ("Larkins") is a resident of the State of Georgia and is the President of Ascension.  Larkins signed the Aircraft Loan and Security Agreement on behalf of Ascension and, upon information and belief, is responsible for the management of Ascension's business affairs.

5.      Defendant Executive Visions, Inc. ("Executive Visions"), is a Georgia corporation with its principal place of business in Norcross, Georgia.  Executive Visions, upon information and belief, holds a partial, junior interest in the Aircraft as a result of a subsequent transaction with Ascension occurring after the date when the Aircraft Loan and Security Agreement was signed by the parties and filed with the FAA.

6.      Defendant HT Eclipse, LLC ("HT Eclipse") is a Georgia limited liability company with its principal place of business in Atlanta, Georgia. HT Eclipse, upon information and belief, holds a partial, junior interest in the Aircraft as a result of a subsequent transaction with Ascension occurring after the date when the Aircraft Loan and Security Agreement was signed by the parties and filed with the FAA.

7.      Defendant Sutlive Aviation, LLC ("Sutlive Aviation") is a Georgia limited liability company with its principal place of business in Atlanta, Georgia. Sutlive Aviation, upon information and belief, holds a partial, junior interest in the Aircraft as a result of a subsequent

ELECTRONICALLY FILED - 2020 Feb 14 10:21 AM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000825

transaction with Ascension occurring after the date when the Aircraft Loan and Security Agreement was signed by the parties and filed with the FAA.

8.      Defendant Traylor & Associates, LLC ("Traylor & Associates") is a Georgia limited liability company with its principal place of business in Destin, Florida, Traylor & Associates, upon information and belief, holds a partial, junior interest in the Aircraft as a result of a subsequent transaction with Ascension occurring after the date when the Aircraft Loan and Security Agreement was signed by the parties and filed with the FAA.

9.      Defendant Triple T Holdings, Inc. ("Triple T Holdings"), is a Nevada corporation with a principal place of business in Duluth, Georgia. Triple T Holdings, upon information and belief, holds a partial, junior interest in the Aircraft as a result of a subsequent transaction with Ascension occurring after the date when the Aircraft Loan and Security Agreement was signed by the parties and filed with the FAA.

10.      Defendant CLBD Real Estate Holdings, LLC ("CLBD") is a Georgia limited liability company with its principal place of business in Duluth, Georgia. CLBD, upon information and belief, holds a partial, junior interest in the Aircraft as a result of a subsequent transaction with Ascension occurring after the date when the Aircraft Loan and Security Agreement was signed by the parties and filed with the FAA.

11.      Defendants Ascension, Executive Visions, HT Eclipse, Sutlive Aviation, Traylor & Associates, Triple T. Holdings, and CLBD are hereinafter collectively referred to as the "Co-Owner Defendants."

12.      Defendant Universal Weather and Aviation, Inc. ("UWA") is a corporation organized and existing under the laws of the state of Texas with a principal place of business in Houston, Texas.  UWA, through a lien assessment that was recorded with the FAA on December

ELECTRONICALLY FILED - 2020 Feb 14 10:21 AM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000825

26, 2018, claims a junior lien assessment relating to the Aircraft for "fuel and ground services" in the amount of $643.70.

13.     Defendant Universal Fuel, Inc. ("UF") is a corporation organized and existing under the laws of the state of Texas with a principal place of business in Houston, Texas.  UF, through a lien assessment recorded with the FAA on December 26, 2018, claims a junior lien relating to the Aircraft for "fuel and ground services" in the amount of $12,729.00.

14.     Based on the subject matter of this suit and the location of the Aircraft, this Court has jurisdiction over this action and venue is proper before this Court.

**FACTUAL BACKGROUND**

15.     The Aircraft is currently located in Charleston County, South Carolina.

16.     The Aircraft cannot be flown in its present condition. The Aircraft requires substantial maintenance and repair in order to be airworthy. Due to the status of the current ownership, the Aircraft lacks clear title and registration required by the FAA prior to flight and is not insured.

17.     HFT and Ascension are parties to the Aircraft Loan and Security Agreement, which secures a loan of $2,217,436.00 made by HFT to Ascension, which represents a purchase money security interest in the Aircraft that was initially created and held by the manufacturer of the Aircraft.  The Aircraft Loan and Security Agreement creates a security interest in favor of HFT in the Aircraft, which was perfected through filing with the FAA.  A copy of the Aircraft Loan and Security Agreement between HFT and Ascension is attached as Exhibit A.

18.     The Holland Family Trust is the Holder of the Aircraft Loan and Security Agreement executed by Ascension, as the Maker.

ELECTRONICALLY FILED - 2020 Feb 14 10:21 AM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000825

19.    The Aircraft Loan and Security Agreement provides, in relevant part, as follows:

<u>Governing Law</u>. Borrower consents and agrees that any legal proceeding brought by the Lender against Borrower with respect to the Loan and this Agreement or the Liabilities, may be brought in any South Carolina court of competent jurisdiction, and Borrower hereby irrevocably accepts and consents with regard to any such action or proceeding, to both the jurisdiction of the aforesaid courts and venue therein. This Agreement has been delivered in South Carolina, and shall be construed in accordance with the laws of the State of South Carolina. Whenever possible each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under all applicable law, but if any provision of this Agreement shall be prohibited by or invalid under applicable law, such provision shall be void or ineffective to the extent of such prohibition or invalidity only, without invalidating the remainder of such provision or the remaining provisions of this Agreement. The rights and privileges of the Lender hereunder shall inure to the benefit of its successors and assigns and this Agreement shall be binding on all successors and assigns of Borrower, and this Agreement is not assignable by Borrower.

*See Aircraft Loan and Security Agreement*, ¶ 8(a).

20.    Ascension has defaulted under the terms of the Aircraft Loan and Security Agreement and has failed to cure its defaults.  Specifically, Ascension acknowledged and agreed "to make payments of Principal and Interest to Holder on a quarterly basis (June 30th, September 30th, December 31st, and March 31st of each year), beginning September 30, 2016 in the amount of $250,000.00 […] with a final, single balloon payment on the Maturity Date of all outstanding Principal and Interest." *See Aircraft Loan and Security Agreement*, ¶ 4.

21.    As set forth in the Aircraft Loan and Security Agreement, Ascension granted and conveyed the following security interest in favor of the Holland Family Trust: the EA500 aircraft N826ES/Serial No. 550-0282 (the "<u>Aircraft</u>"), and all hereafter acquired related equipment, log books and proceeds from the use or sale of the Aircraft." *See Aircraft Loan and Security Agreement*, ¶ 5.  The interests of Defendants are either subsequent to the interest of HFT in terms of the date of filing or are otherwise inferior to the interest of HFT, and therefore are subject to foreclosure along with the interests of Ascension.

ELECTRONICALLY FILED - 2020 Feb 14 10:21 AM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000825

22.    Ascension has failed and refused to uphold its obligations under the Aircraft Loan and Security Agreement, including its obligation to make payments of Principal and Interest, and is therefore in default in accordance with the terms of the Aircraft Loan and Security Agreement. For these reasons, HFT is entitled to judicial enforcement of its security interest and an order foreclosing upon all junior lien interests held by the various Defendants in this action.

### FOR A FIRST CAUSE OF ACTION
*(Foreclosure and Quieting Title – All Defendants)*

23.    Plaintiffs restate and re-allege each and every allegation above as if fully set forth herein.

24.    The Aircraft Loan and Security Agreement is secured by the FAA Lien (Conveyance No. JP015852) in favor of Plaintiff on the Aircraft, and all related equipment, logbooks and proceeds from the use or sale of the Aircraft. *See Aircraft Loan and Security Agreement*, ¶ 5.

25.    The Aircraft Loan and Security Agreement constitutes a perfected, valid first priority lien against the Aircraft that is senior to all other interests and liens held by the Defendants to this action.  Also, as the Aircraft Loan and Security Agreement traces back to the original purchase money security interest of the Aircraft's manufacturer, Eclipse Aviation Corporation and Eclipse Aerospace, Inc.

26.    Ascension's failure and refusal to repay the indebtedness in accordance with the Aircraft Loan and Security Agreement is a default, which default has not been cured.

27.    As a result of Ascension's breach of the Aircraft Loan and Security Agreement, Plaintiffs are entitled to foreclose the lien on the Aircraft to enforce the security interest held by HFT, which will result in all junior liens, ownership interests or other rights in the Aircraft on the part of Defendants being foreclosed upon and eliminated through judicial action.

ELECTRONICALLY FILED - 2020 Feb 14 10:21 AM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000825

28.     The interests of the Co-Owner Defendants (Sutlive Aviation, Traylor & Associates, HT Eclipse, Triple T Holdings, and Executive Visions) derive from documentation dated on March 11, 2019 and filed on April 18, 2019, indicating that all such interests are inferior to those of HFT and are therefore extinguishable.

29.     Furthermore, on December 3, 2015, an Aircraft Security Agreement was entered between CLBD Real Estate Holdings, LLC, as the "Secured Party," and Ascension Aircraft, LLC, as the "Debtor" relating to a security interest in the Aircraft, which was recorded on December 12, 2015 and filed as FAA Doc # JD010020 (the "CLBD Aircraft Security Agreement"). A copy of the CLBD Aircraft Security Agreement is attached as Exhibit B.

30.     Although the CLBD Aircraft Security Agreement indicates that a security interest was granted in favor of CLBD in the amount of $1,000,000.00, the CLBD Aircraft Security Agreement is invalid on the basis that it was signed by a party that did not own the Aircraft and was therefore incapable of granting a security interest in the Aircraft.

31.     Furthermore, as the interest of HFT derives from the purchase money security interest that was once held by the manufacturer of the Aircraft (Eclipse Aviation Corporation and Eclipse Aerospace, Inc.), it is superior to the interest created by the CLBD Aircraft Security Agreement.

32.     Finally, the interests of UWA and UF are inferior to the interests of Plaintiffs and are thereby subject to being judicially extinguished through this proceeding.

33.     HFT, as the holder of the Aircraft Loan and Security Agreement, requests that the Court issue an order consolidating the entire 100% of ownership interest in the Aircraft in MMT, which currently owns an ownership interest of 5.667% in the Aircraft, and is affiliated with HFT through its Trustee. Plaintiffs further request that the order require Defendants, including Larkins,

ELECTRONICALLY FILED - 2020 Feb 14 10:21 AM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000825

to provide all documentation, equipment, logs, repair records, and other papers or materials relating to the Aircraft over to Plaintiffs.

## FOR A SECOND CAUSE OF ACTION
### *(Declaratory Judgment – All Defendants)*

34.     Plaintiffs restate and re-allege each and every allegation above as if fully set forth herein.

35.     The South Carolina Declaratory Judgment Act provides that this Court has the power to declare rights, status and other legal relations whether or not further relief is or could be claimed. *See* S.C. Code § 15-53-20.  All necessary parties known to Plaintiffs have been joined to this action.  An actual, justiciable controversy exists between the parties relating to their rights and ownership interests in the Aircraft, and all necessary parties are joined to this action.

36.     Based on the foregoing, Plaintiffs request that the Court enter a declaratory judgment indicating that 100% of ownership interest in the Aircraft shall be consolidated in MMT, which currently owns an ownership interest of 5.667% in the Aircraft, and is affiliated with HFT through its Trustee, as the interests of HFT are superior to all other interests and liens held by Defendants, which are subject to being judicially extinguished through this action.

37.     HFT, as the holder of the Aircraft Loan and Security Agreement, requests that the Court issue an order consolidating the entire 100% of ownership interest in the Aircraft in MMT, which currently owns an ownership interest of 5.667% in the Aircraft, and is affiliated with HFT through its Trustee.  Plaintiffs further request that the order require Defendants, including Larkins, to provide all documentation, equipment, logs, repair records, and other papers or materials relating to the Aircraft over to Plaintiffs.

38.     Until the priority of the lien is judicially confirmed to resolve the current fractional status of ownership, the Aircraft is adversely affected due to uncertainty. It also continues to

ELECTRONICALLY FILED - 2020 Feb 14 10:21 AM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000825

depreciate in value over time. Therefore, Plaintiffs request that the Court order a speedy hearing in accordance with Rule 57 of the South Carolina Rules of Civil Procedure and advance the expedited hearing on the next calendar.

### FOR A THIRD CAUSE OF ACTION
*(In the Alternative - Unjust Enrichment – Defendant CLBD)*

39.     Plaintiffs restate and re-allege each and every allegation above as if fully set forth herein.

40.     To the extent that the CLBD Aircraft lien is not declared invalid, junior to the lien held by HFT, already satisfied, or otherwise inapplicable because it was created by an entity that did not have the legal ability to grant a security interest in the Aircraft, Plaintiffs are entitled to a judgment against CLBD or a reduction in the interest of CLBD for the reasonable value of the benefit conferred by Plaintiffs upon CLBD through the protection, preservation and enhancement of the underlying collateral undertaken by Plaintiffs during a time period in which CLBD has failed to take any action with regard to the Aircraft.

41.     If CLBD has any remaining interest in the Aircraft, it is only as a result of the action of Plaintiffs that CLBD can recover any benefit from the Aircraft, which benefit is something that Plaintiffs would have conferred upon CLBD without any intention of doing so.

42.     If CLBD has any remaining interest in the Aircraft, it is unjust under the circumstances for CLBD to retain any benefit from the Aircraft without compensating Plaintiffs for the reasonable value of the benefit conferred by Plaintiffs upon CLBD, which is equal in value to whatever remaining interest that CLBD may have.

43.     Under the circumstances, Plaintiffs are entitled to recover damages for the reasonable value of the benefit conferred upon CLBD, to the full extent of any remaining interest that CLBD may have in the Aircraft.

ELECTRONICALLY FILED - 2020 Feb 14 10:21 AM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000825

WHEREFORE, having stated their Complaint against Defendants, Plaintiffs MMT, LLC, and the Holland Family Trust, by and through its Trustee Mason Holland, respectfully request that Court award judgment to Plaintiffs against Defendants, as well as reasonable attorney's fees and costs incurred in connection with this action, along with such other and further relief as the Court deems just and proper.

Respectfully submitted,

By: *s/Ellis R. Lesemann*
Ellis R. Lesemann (S.C. Bar No. 15315)
erl@lalawsc.com
Michelle A. Matthews (S.C. Bar No. 100685)
mam@lalawsc.com
LESEMANN & ASSOCIATES LLC
418 King Street, Suite 301
Charleston, SC 29403
(843) 724-5155

***Attorneys for Plaintiffs MMT, LLC, and the Holland Family Trust, by and through its Trustee Mason Holland***

February 14, 2020
Charleston, South Carolina

ELECTRONICALLY FILED - 2020 Feb 14 10:21 AM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000825

 # Insured Aircraft Title Service, Inc.

| | |
|---|---|
| N Number: | N826ES |
| Make/Model: | ECLIPSE AEROSPACE INC EA500 |
| Serial Number: | 550-0282 |
| Engines: | |
| Propellers: | |
| Fees attached: | $5.00 |

Date:        July 7, 2016

FAA Aircraft Registry                    FILING TIME
Oklahoma City, OK


Dear Gentleman or Madam,

If there are any problems with the attached filed documents, please advise the undersigned or return to:

Insured Aircraft Title Service, Inc.
Public Documents Room
Attention:  Bill Morgan


Do not return the documents to the lending institution, or to the customer indicated, as we are filing the documents at their request.


Sincerely,



Bill Morgan
Documents Specialist

FILED WITH FAA
AIRCRAFT REGISTRATION BR
2016 JUL -7 P 3: 03
OKLAHOMA CITY
OKLAHOMA

COPY

ELECTRONICALLY FILED - 2020 Feb 14 10:21 AM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000825

## AIRCRAFT LOAN AND SECURITY AGREEMENT

This **AIRCRAFT LOAN AND SECURITY AGREEMENT** ("Agreement") is made as of the 16th day May, 2016, by and between **ASCENSION AIR MANAGEMENT, INC.,*** a Georgia Corporation with its principal place of business is located at 2007 Flightway Drive, Atlanta, Georgia 30341 (the "Borrower") and **HOLLAND FAMILY TRUST**, with its principal place of business located at 125 Fairchild Street, Suite 100, Charleston, South Carolina 29492 (the "Lender").

*mortgaging its 94.333 % only

### Recitals

A. Eclipse Aerospace, Inc. ("EAI") loaned funds in the amount of Two Million Two Hundred Thousand Four Hundred Thirty-Six and 00/100 Dollars (**$2,217,436.00**) to Ascension Air Management, Inc. for the purpose of purchasing an EA500 aircraft (N826ES/Serial No. 550-0282).

B. EAI filed a lien (Conveyance No. JP015852) with the Federal Aviation Authority on December 11, 2015 and re-filed a lien on January 6, 2016 that was then released on May 17, 2016 (the "FAA Lien").

Now, therefore, Borrower and Lender hereby agree to these Recitals and the following:

### Agreement

1.      Loan Terms. In consideration of Lender satisfying the obligation of $2,217,436.00 with EAI at execution hereof, the Borrower promises to pay the Lender the sum of Two Million Two Hundred Thousand Four Hundred Thirty-Six and 00/100 Dollars (**$2,217,436.00**) under the following terms (the "Loan"):

(a) Single Payment. Full amount due in one payment on or before December 31, 2016, plus interest payable as set forth;

(b) Interest Calculation. Interest shall be set at the annual fixed rate of 9.0% (the "Interest Rate"); *provided, however*, if:

    i.      Borrower repays $1,650,000.00 on or before **July 31, 2016**, then the interest rate applied to the origination date of this Agreement shall be only the minimum Applicable Federal Rate of 0.67% and Lender shall extend the balance of the Note at the Interest Rate to a maturity date that is equal to the remaining warranty on the EA500 N826ES/Serial No. 550-0282; or

    ii.     Borrower repays after July 31, 2016, but before **September 30, 2016**, then the interest rate applied shall be six percent (6.0%) calculated from the Effective Date of this Agreement to the date of payment and Lender shall extend the balance of the Note at the Interest Rate to a maturity date that is equal to the remaining warranty on the EA500 N826ES/Serial No. 550-0282.

    iii.    Borrower repays after September 30, 2016, but before **December 31, 2016**, then the interest rate applied shall be nine percent (9.0%) calculated from the Effective Date

ORIGINAL DOCUMENT
FILED AT THE F.A.A. BY
I.A.T.S.
DATE: 7-7-16  TIME: 3:03 Pm CDT
Exhibit D, Page 14 of 32

ELECTRONICALLY FILED - 2020 Feb 14 10:21 AM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000825

of this Agreement to the date of payment and Lender shall extend the balance of the Note at the Interest Rate to a maturity date that is equal to the remaining warranty on the EA500 N826ES/Serial No. 550-0282.

(c) <u>Prepayment.</u> Prepayment shall be permitted any time.

(d) <u>Note Due On Sale of Aircraft</u>. If the Aircraft is sold at any time prior to repayment of Principal, then Maturity Date shall be accelerated to the date of such sale and this Note shall be immediately due and payable.

(e) The Note is due and payable in full immediately and without notice at anytime after the aircraft (EA500 N826ES/Serial No. 550-0282) reaching 300 hours of service.

2.      <u>Grant of Security Interest.</u> The Borrower hereby grants Lender a security interest in all of its right, title and interest in and to the following personal property whether now owned or hereafter acquired by Borrower and wherever located (collectively, the "Collateral"):

(a) Airframe Description:

| Manufacturer | Model | FAA Registration No. | Serial No. |
|---|---|---|---|
| Eclipse Aerospace Inc | EA 500 | N826ES | 550-0282 |

Unless specifically described below, the foregoing airframe includes any aircraft engines and avionics that are installed thereon either now or hereafter acquired in the future.

(b)      <u>Related Equipment.</u> All avionics, parts, spare parts, equipment, appliances, accessories, and accessories relating to, affixed to or used in conjunction with the above described airframe including, but not limited to, the radio, radar, navigation systems and other electronic equipment attached thereto and made a part thereof.

(c)      <u>Log Books.</u> All engine and airframe log books, maintenance records and all airworthiness certificates relating to the airframe and engine(s) described above (all of which property described in Paragraph 1.A. through D. is hereinafter collectively called the "Aircraft").

(f)      <u>Proceeds.</u> All proceeds of every kind and nature of any of the foregoing Collateral ("Proceeds") including, but not limited to, all replacements thereof and substitutions therefor, all payments under insurance (whether or not Lender is loss payee under the policy), any indemnity, warranty or guaranty payable by reason of loss or damage to the Aircraft, and any payments under a lease or rental agreement with respect to the Aircraft (whether contrary to the terms of this Agreement or with the consent of Lender).

3.      <u>Indebtedness Secured.</u> Borrower hereby grants Lender the foregoing continuing security interest in the Collateral to secure the repayment of the Loan (including all renewals, re-financings, and extensions thereof) and any and all other obligations of any and every kind and nature heretofore, now, or hereafter owing from Borrower to Lender and however incurred or evidenced, whether primary, secondary, contingent or otherwise, whether arising under this Agreement or under any other security agreements, promissory notes, guaranties, mortgages, leases, instruments, documents, contracts or agreements heretofore, now, or hereafter executed by Borrower (hereinafter collectively called the "Liabilities") together with all interest, costs and expenses and reasonable attorneys' fees made or incurred by Lender in the disbursement, administration, and collection of the Liabilities, and in the protection, maintenance, and liquidation of the Aircraft, including without

ELECTRONICALLY FILED - 2020 Feb 14 10:21 AM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000825

limitation all of Lender's costs and expenses incurred in locating or repossession of the Aircraft, returning the Aircraft to the location designated by the Lender, and all costs of repairing, rehabilitating, insuring and storing the Aircraft.

4.      Representations and Covenants. Borrower represents and, until the Liabilities are paid in full, covenants as follows:

(a)      Recitals. The statements made in the recitals to this agreement are true and correct and will continue to remain true and correct until the Borrower notifies Lender in writing to the contrary.

(b)      Citizenship. Borrower qualifies in all respects as a citizen of the United States as defined in the Federal Aviation Act of 1958, as amended (the "Act") and the Aircraft is not currently registered and will not be registered in the future under the laws of any other country.

(c)      Borrower's Existence and Authority. To the extent Borrower is a legal entity, it is in good standing or otherwise registered and validly existing under the laws of the state referenced after its name on the first page of this Agreement and the person(s) executing this Agreement on behalf of Borrower has full power and complete authority to execute this Agreement, the Loan, and all other related documents.

(d)      Financial Information. All financial information provided by Borrower to Lender fully and fairly presents the financial condition of the Borrower, and since the date of the Borrower's latest financial statements provided to Lender, there has been no material adverse change in Borrower's business, property, or condition (financial or otherwise). Borrower will provide, upon the request of Lender, such financial statements and information as reasonably requested by Lender.

(e)      Title and Encumbrances. Borrower is (or, after disbursement of the Loan proceeds in accordance with Borrower's directions, will be) the beneficial owner of the Aircraft holding title to the Aircraft, free and clear of any liens or encumbrances other than the security interest granted to the Lender under this Agreement. Borrower will keep the Aircraft free and clear of any and all non-Lender security interests, liens, and claims of any and every kind and immediately advise Lender in writing of the commencement of any proceeding, action, suit, claim or occurrence concerning the Collateral or which affects or may affect Borrower's continued possession of the Aircraft.

(f)      No Litigation. There are no suits or proceedings pending before any court, government agency, arbitration panel, or administrative tribunal (or, to Borrower's knowledge, threatened against Borrower) which may result in any material adverse change in the business, property or condition of Borrower (financial or otherwise).

(g)      Taxes. Borrower has filed all federal, state and local tax returns which Borrower is required by law to file, and all such taxes are current and have been paid in full.

(h)      No Violations. Borrower's execution of this Agreement, and all related documents and agreements pertaining to the Loan or the Liabilities does not violate nor constitute a breach of Borrower's articles of incorporation or bylaws (if Borrower is a corporation), operating agreement (if Borrower is a limited liability company) or partnership agreement (if Borrower is a partnership) nor does Borrower's execution of the Loan, this Agreement and such related

ELECTRONICALLY FILED - 2020 Feb 14 10:21 AM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000825

documents and agreements constitute a breach of any other agreement to which Borrower is a party or to which it is subject.

(i)     Business Purpose. Borrower represents that the Loan proceeds and the Collateral have not and will not be used for primarily personal, family or household purposes. If Borrower is a natural person, the Borrower does not consider and will not consider the Aircraft a dwelling, as such term is defined under Regulation Z issued by the Board of Governors of the Federal Reserve System to implement the Federal Truth in Lending Act (15 U.S.C. 1601 et seq.).

(j)     No Sale or Lease. Notwithstanding Borrower's grant of a security interest in the Proceeds, Borrower will not sell or lease or otherwise transfer the Aircraft or any parts thereof to any other person, party or entity, for any purpose without the prior written consent of Lender. Lender is aware that Borrower shall sell fractional lease or use interest, but title to the Aircraft shall remain in Borrower's name. Borrower shall be permitted to establish an escrow to hold the related bill of sale applicable to each purchaser to be released upon payment in full of the Loan.

5.     Additional Covenants. Until the Liabilities are paid in full, Borrower shall:

(a)     Aircraft and Logbook Maintenance. Maintain, service, repair, overhaul, and test the Aircraft so as to keep the Aircraft in good operating condition and at all times in such operating condition as is necessary to enable the airworthiness certification of the Aircraft to be maintained in good standing under the Act and maintain or cause to be maintained all records, logs, and other materials required to be maintained on the Aircraft by the Federal Aviation Administration (the "FAA").

(b)     Aircraft Damage. Immediately inform the Lender, in writing, of any damage to, destruction of or confiscation of the Aircraft or any part thereof.

(c)     Inspection of Aircraft. Permit or authorize the Lender or its agents to inspect the Aircraft and copy Borrower's records pertaining thereto including, but not limited to, the Aircraft's log books and maintenance records.

(d)     Compliance With Law. At all times to strictly observe, obey, and comply with all applicable federal, state, and local statutes, ordinances and regulations, including by illustration, but not limitation, the Act and the FAA regulations, rules and orders promulgated thereunder.

(g)     Insurance.

(i)     Borrower shall at all times, at its own expense, maintain in effect the following casualty insurance for an amount not less than the amount financed by the Lender with insurers satisfactory to Lender and rated B+ or better by Best's Rating Service: (A) Aircraft Hull All Risks Insurance covering both ground and flight exposure (including any engine and propeller when not installed) in all geographical areas in which the Aircraft will be operated; and (B) if the Borrower may, in the judgment of Lender, operate the Aircraft outside the continental United States, appropriate Hull War Risks and Allied Perils Insurance (including, without limitation, hijacking, air piracy, confiscation, and expropriation by governments). All such casualty policies shall (1) name the Lender as loss payee under a standard loss payable clause; (2) provide that if the insurer(s) cancel such insurance for any

4

ELECTRONICALLY FILED - 2020 Feb 14 10:21 AM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000825

reason whatsoever, or if the same is allowed to lapse for nonpayment of premium, the insurer(s) shall give Lender not less than thirty (30) days [ten (10) days with respect to War Risk coverage] advance written notice of such cancellation or lapse; and (3) provide that with respect to the interest of Lender, the insurance afforded shall not be invalidated by any action or neglect of the Borrower whether or not such act or neglect is a breach or violation of any warranties, declarations or conditions contained in such policies.

(ii) Borrower shall further maintain, at its own expense, Aircraft Liability and Comprehensive General Liability insurance naming both Borrower and Lender as insured parties. The provisions of such liability insurance policies shall apply separately to each insured against whom claim is made or suit is brought except with respect to limits of liability. Borrower shall not use or permit the Aircraft to be used for any illegal purpose or in a manner for which the Aircraft becomes uninsured.

(iii) Borrower shall either deliver to the Lender the policies required herein or shall arrange for delivery to Lender of appropriate certifications from insurance underwriters of recognized standing certifying to Lender that the insurance coverage required under this Agreement are in effect.

(iv) The Lender is hereby appointed attorney-in-fact for the Borrower with respect to any and all insurance policies covering the Aircraft, whether or not Lender is named as loss payee in such policies, to make proof of loss, settle or compromise claims, and to receipt for any sums collected under such policies. Borrower shall not adjust, settle, or compromise any loss or claim with Borrower's insurance carrier without the prior written consent of the Lender. Any injury to or loss of the Aircraft from whatever cause shall not release Borrower from the payment of any Liabilities. If Borrower at any time fails to obtain or maintain the insurance coverage required above or pay any insurance premium due, the Lender, without waiving or releasing the default of Borrower hereunder, may at any time (but without obligation to do so) make such payment and obtain and maintain such policies of insurance, pay such premiums, and take such action with respect thereto as Lender deems advisable. All sums disbursed by Lender pertaining to the Aircraft, including but not limited to insurance premiums, attorneys' fees, court costs, expenses, and all other fees, charges, costs, and expenses relating thereto, shall be part of the Liabilities secured hereby and shall be payable upon demand, and upon nonpayment by Borrower shall bear interest at the highest interest rate specified in the Loan.

6.  Default.

(a)      Events of Default. Upon the occurrence of an Event of Default, as defined in this Agreement, Lender shall be entitled to exercise all of its legal rights and remedies, including the right to immediate possession of the Collateral. Borrower agrees, in case of default, to make the Collateral available at its expense, at a place acceptable to the Lender. Notification of intended disposition of the Collateral shall be deemed reasonably and properly given if sent at least ten (10) days before such disposition to Borrower and any guarantor at their last known address. The Lender may comply with any applicable state or federal law requirements in connection with a disposition of the Collateral and compliance therewith will not be considered to adversely affect the commercial reasonableness of any sale of the Collateral. The proceeds of sale will be applied to the reasonable expenses of retaking, holding, preparing for disposition, processing and disposing of the Collateral and, to the extent permitted by law, the Lender's reasonable attorney's fees and legal expenses. All remaining proceeds will be applied to the Liabilities. If any money is left over

ELECTRONICALLY FILED - 2020 Feb 14 10:21 AM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000825

(surplus) then, subject to the rights of the holder of a subordinate security interest or lien, it will be paid to Borrower. Borrower agrees to pay all of Lender's costs of collection of the Loan and the Liabilities and enforcement of the Lender's rights hereunder, including reasonable attorneys' fees. In case of any deficiency upon sale of the Collateral, Borrower shall immediately pay such deficiency to the Lender.

(b)     Default and Enforcement. Upon the occurrence of any one or more of the following Events of Default:

(i)     Borrower fails to pay any amount when due under the Loan or under any other instrument evidencing any indebtedness of Borrower to Lender;

(ii)     any representation or warranty made under this Agreement or information provided by Borrower to Lender in connection with this Agreement is or was false or fraudulent in any material respect;

(iii)     a material adverse change occurs in Borrower's financial condition;

(iv)     Borrower fails to timely observe or perform any of the covenants or duties contained in this Agreement;

(v)     any guarantee of Borrower's obligations under this Agreement is revoked or becomes unenforceable for any reason;

(vi)     Borrower, or a surety or guarantor of the Loan dies or ceases to exist; or

(vii)     Lender at any time believes in good faith that the prospect of payment or performance under this Agreement, under any other instrument evidencing any indebtedness of Borrower to Lender or under any agreement securing this Loan is impaired, then the unpaid balance shall, at the option of Lender, without notice, mature and become immediately payable.

The unpaid balance shall automatically mature and become immediately payable in the event any Borrower or any surety, indorser or guarantor for any of Borrower's obligations under the Loan becomes the subject of bankruptcy or other insolvency proceedings. Lenders receipt of any payment on the Loan after the occurrence of an Event of Default shall not constitute a waiver of the default or the Lender's rights and remedies upon such default.

7.     Indemnification. Borrower agrees to at all times indemnify the Lender and its directors, officers, employees and agents, from and against any and all liabilities, obligations, losses, damages, penalties, actions, suits, costs, legal fees, expenses, and disbursements of any and every kind and nature as are imposed on, incurred by, or asserted against the Lender, its directors, officers, employees and agents which in any way arise out of or are related to the Aircraft and any other item of Collateral, the transactions contemplated hereby, or the use, possession, maintenance, operation, conditions, sale registration, ownership, lease or other disposition of the Aircraft and any other item of Collateral, including, without limitation, any and all claims or penalties arising from any violation of the laws of any country or political subdivision thereof and any loss of or damage to any property or the death or injury of any person.

8. Miscellaneous.

ELECTRONICALLY FILED - 2020 Feb 14 10:21 AM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000825

(a) <u>Governing Law</u>. Borrower consents and agrees that any legal proceeding brought by the Lender against Borrower with respect to the Loan and this Agreement or the Liabilities, may be brought in any South Carolina court of competent jurisdiction, and Borrower hereby irrevocably accepts and consents with regard to any such action or proceeding, to both the jurisdiction of the aforesaid courts and venue therein. This Agreement has been delivered in South Carolina, and shall be construed in accordance with the laws of the State of South Carolina. Whenever possible each provision of this Agreement shall be interpreted in such manner as to be effective and valid under all applicable law, but if any provision of this Agreement shall be prohibited by or invalid under applicable law, such provision shall be void or ineffective to the extent of such prohibition or invalidity only, without invalidating the remainder of such provision or the remaining provisions of this Agreement. The rights and privileges of the Lender hereunder shall inure to the benefit of its successors and assigns and this Agreement shall be binding on all successors and assigns of Borrower, but this Agreement is not assignable by Borrower.

(b) <u>Interpretation</u>. Except as otherwise defined in this Agreement, all terms in this Agreement shall have the meanings provided by the Act, rules, and regulations, and by the South Carolina Uniform Commercial Code as either is amended from time to time. Lender may file a photographic copy of this Agreement for use as a financing statement. Any delay on the part of the Lender in exercising any power, privilege, or right hereunder, under the Loan, or under any other instrument or agreement executed by Borrower, shall not operate as a waiver thereof, and no single or partial exercise or the exercise of any other power, privilege, or right shall preclude other or further exercise thereof, or the exercise of any other power, privilege or rights.

(c) <u>Waiver</u>. The Borrower (i) waive(s) presentment, diligence, protest, demand, notice of demand, notice of acceptance or reliance, notice of non-payment, notice of dishonor, notice of protest and all other notices to parties in connection with the delivery, acceptance, performance, default or enforcement of this Note; and (ii) consent(s) to any and all delays, extensions, renewals or other modifications with respect to this Note, any related document or the debt(s) evidenced hereby or thereby or any waivers of any term hereof or thereof, any release, surrender, taking of additional, substitution, exchange, failure to perfect, record, preserve, realize upon, or lawfully dispose of, or any other impairment of, any collateral or other security, or any other failure to act by the Lender or any other forbearance or indulgence shown by the Lender, from time to time and in one or more instances and agrees that none of the foregoing shall release, discharge or otherwise impair any of their liabilities under or otherwise relating to this Note or any related agreement, instrument or other related document

(d) <u>Amendments to this Agreement</u>. This Agreement may only be modified by a written agreement which specifically refers to this Agreement and which is signed by the Lender, the Borrower and any other party charged with the changes expressed in such modification.

(e) <u>Notices</u>. Unless otherwise provided, any notice and other communications required or permitted under this Agreement shall be in writing and shall be mailed by United States first-class mail, postage prepaid, sent by facsimile or email (in each case with electronic confirmation) or delivered personally by hand or by a nationally recognized courier addressed to the party to be notified at the address indicated for such party above, or at such other address as such party may designate by ten (10) days advance written notice to the other parties hereto. All such notices and other written communications shall be effective on the

earlier of: (i) five (5) days from the date of mailing, (ii) confirmed facsimile transfer, or (iii) actual receipt by the party to be notified.

(f) <u>Attorneys' Fees</u>. Borrower shall pay the fees of counsel for Lender in an amount not to exceed $7,500, and such amount may be added to the Principal of the Note at the option of the Lender. If any action at law or in equity is necessary to enforce or interpret the terms of any of the Transaction Agreements, the prevailing party shall be entitled to reasonable attorneys' fees, costs and disbursements in addition to any other relief to which such party may be entitled.

(g) <u>Entire Agreement</u>. Borrower acknowledges and agrees with Lender that this Agreement, the Loan, and all of the other documents and agreements referenced herein are the entire agreement between the parties, and that there are no other agreements, written or oral, express or implied, and Borrower acknowledges receipt of a true and complete copy of this Agreement and such other documents, instruments, and agreements as Borrower shall have requested from Lender on or prior to the date of this Agreement.

(h) <u>Counterparts</u>. This Agreement may be executed in two or more electronic counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

(j) <u>Severability</u>. If one or more provisions of this Agreement are held to be unenforceable under applicable law, such provision shall be excluded from this Agreement and the balance of the Agreement shall be interpreted as if such provision were so excluded and shall be enforceable in accordance with its terms.

(l) <u>Further Assurances</u>. From and after the date of this Agreement, upon the request of any Lender or the Borrower, the Borrower and Lender shall execute and deliver such instruments, documents and other writings as may be reasonably necessary or desirable to confirm and carry out and to effectuate fully the intent and purposes of this Agreement.

[*Signature on following page*]

ELECTRONICALLY FILED - 2020 Feb 14 10:21 AM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000825

Exhibit D, Page 21 of 32

ELECTRONICALLY FILED - 2020 Feb 14 10:21 AM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000825

**IN WITNESS WHEREOF**, the parties have executed this Agreement on the date above written.

BORROWER:

**Ascension Air Management, Inc.**

By: _____

Jamail Larkins
President

LENDER:

**Holland Family Trust**

By: _____

Mason Holland
Trustee

[*Signature Page to AAM-HFT Loan and Security Agreement*]

9

Exhibit D, Page 22 of 32

CERTIFIED COPY
to be Recorded by FAA

I hereby certify this is a true
and exact copy of the original.
AEROtitle

JD010020 Conveyance Recorded Dec/12/2015 07:11 AM FAA
ELECTRONICALLY FILED - 2020 Feb 14 10:21 AM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000825

## AIRCRAFT SECURITY AGREEMENT
### (Ascension Aircraft, LLC)

This Aircraft Security Agreement (the "**Agreement**") is made effective and entered into as of **December 3, 2015** (the "**Agreement Date**"), by and between **ASCENSION AIRCRAFT, LLC**, a limited liability company organized and existing under the laws of the State of Georgia, which maintains a chief executive office and principal place of doing business in the State of Georgia at **2007 FLIGHTWAY DRIVE, CHAMBLEE, GEORGIA 30341** (hereinafter referred to as "**Debtor**") and **CLBD REAL ESTATE HOLDINGS, LLC**, which maintains an office and place of doing business at **3460 MOYE TRAIL, DULUTH, GEORGIA 30097** (together with its participants, successors and assigns, hereinafter referred to as "**Secured Party**"). Debtor hereby grants to Secured Party a security interest in the following aircraft and described personal property, to wit:

**AIRCRAFT (FAA registration number, manufacturer, model and serial number):**

|  |  |
|---|---|
| FAA Registration No. | N826ES |
| Manufacturer: | Eclipse Aerospace Inc. |
| Model: | 500 |
| Serial No.: | 550-0282 |

**ENGINE(S) (Manufacturer, model and serial number):**

| Engine 1 (LH): | Manufacturer: | Pratt & Whitney (under 550hp) |
|---|---|---|
|  | Model: | PW610F |
|  | Serial No.: | LA0576 |
| Engine 2 (RH): | Manufacturer: | Pratt & Whitney (under 550hp) |
|  | Model: | PW610F |
|  | Serial No.: | LA0578 |

**MODIFICATIONS:**  See **Schedule "A"** attached hereto and made a part hereof by this reference.

**SPARE PARTS:**  All parts now or hereafter owned by Debtor related to or used in connection with the Collateral, engines and/or propellers, and/or modifications, wherever located, although now located at **ECLIPSE AEROSPACE, INC.'S FACILITIES LOCATED IN ALBUQUERQUE, NEW MEXICO** or to be located after delivery of the Collateral at **DEKALB-PEACHTREE AIRPORT (PDK).**

together with all engines, equipment, propellers, avionics, instruments, spare parts, accessions, additions, modifications, Supplemental Type Certificates, approvals, and all air frame, engine log books and other log books, maintenance service and flight manuals, handbooks, records, manuals, manufacturer's and other warranties and documentation relating to the above, whether now or hereafter attached thereto or used in connection therewith, and all substitutions and replacements for any of the foregoing; all of the foregoing included in the term "**Aircraft**" as used herein, together with:

(1) Any rents, fees, leasing commissions, management fees, fractional sales or ownership fees or commissions, or accounts receivable of, or contract rights of the Debtor now existing or hereafter created resulting from the lease, rental, management or other disposition or use of the Aircraft;

(2) All other property of the Debtor whether now or hereafter in the possession or control of the Secured Party or otherwise, for any purpose, including but not limited to:

(a) any balance or deposit account of the Debtor whether such accounts be general or special, individual or joint,

(b) all drafts, checks, notes or other items held by the Secured Party for the Debtor or deposited with the Secured Party for collection, and

153430932181
$5.00  12/09/2015



ELECTRONICALLY FILED - 2020 Feb 14 10:21 AM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000825

(b)    all drafts, checks, notes or other items held by the Secured Party for the Debtor or deposited with the Secured Party for collection, and

(c)    any dividends, rebates or insurance proceeds held by the Secured Party; and

(3)    The products or proceeds (including insurance proceeds) of any of the foregoing.

*(The Aircraft and the collateral described in (1), (2) and (3) above in which the Debtor has herein granted to the Secured Party a security interest are herein collectively referred to as the "*__Collateral__*").*

The security interest is granted to the Secured Party in the above-described Collateral for the purpose of securing the following obligations and liabilities of the Debtor to Secured Party (hereinafter referred to as the "__Secured Obligations__"):

FIRST:    (a)    Loan in the original principal amount of *One Million and 00/100 Dollars ($1,000,000.00)* (the "__Loan__") of even date herewith, as evidenced by that certain Secured Purchase Money Promissory Note dated as of **December 3, 2015**, from Debtor and Ascension Air Management, Inc. (the "__Co-Obligor__") in favor of Secured Party of even amount with the Loan (the "__Note__") with interest thereon, together with all other fees, charges and amounts chargeable or otherwise authorized therein, and any and all renewals, modifications, replacements, amendments, restatements and extensions thereof.

(b)    Any and all other indebtedness that Debtor, Co-Obligor or any other Obligor may now or hereinafter owe jointly or severally to Secured Party, either directly or indirectly, as maker, endorser, guarantor, surety or otherwise, and whether or not due, including, but not limited to, attorneys' fees in the amount of fifteen percent (15%) of principal and interest owing under the Note if any of said indebtedness is collected by or through an attorney-at-law.

SECOND:    The prompt and faithful discharge and performance of each agreement of the Debtor herein contained or otherwise made with or for the benefit of the Secured Party, and the repayment of any sums expended or advanced by the Secured Party for the maintenance or preservation of the Collateral or in enforcing the rights of Secured Party hereunder, including, without limitation, court costs and attorneys' fees for the services of counsel employed to collect any such sums expended or advanced; provided, that, in the event the Note or any other amounts related to agreements of the Debtor herein contained or otherwise made for the benefit of the Secured Party, are collected by or through an attorney at law, Debtor agrees to pay all costs of and expenses of collection, including, but not limited to, attorneys' fees in the amount of fifteen percent (15%) of principal and interest owing under the Note.

Debtor hereby declares, warrants and represents to the Secured Party that:

(1)    Debtor is the absolute owner of the legal and beneficial title to the Collateral and is in possession thereof, and that the same is free and clear of all liens, encumbrances, and adverse claims whatsoever other than the security interest and/or the lien created by this Agreement.

(2)    Debtor has unencumbered fee simple title to the Collateral and the right to give this Agreement, and Debtor will defend at Debtor's sole cost and expense Secured Party's title in the Collateral against all claims and demands of all persons at any time claiming the same or any interest therein;

(3)    Debtor will keep the Collateral in good condition and repair and will not permit the Collateral to be misused or abused, or used contrary to law, or any rule, regulation,

ELECTRONICALLY FILED - 2020 Feb 14 10:21 AM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000825

insurance policy or order of the FAA, or to be leased or hired or to sell or encumber the same (whether in whole or pursuant to a fractional interest) without the written permission of Secured Party, and will pay all taxes, assessments, license, and permit fees, fines, repair, storage, fuel bills, and all other charges, liens, claims and expenses on, asserted against or relating to the Collateral. The loss or destruction of the Collateral shall not affect or impair the liability of Debtor to pay the Secured Obligations;

(4)    Debtor is a citizen of the United States as defined in the Federal Aviation Act of 1958, as amended (hereinafter referred to as the "**Act**"), and the Aircraft will at all times be and remain duly registered under the Act and will not be registered under the laws of any other country;

(5)    The home Airport at which the Aircraft and spare parts will at all times be based shall be **DEKALB-PEACHTREE AIRPORT (PDK)** (the "**Home Airport**"), and the Debtor agrees that it will not (i) change the Home Airport at which the Aircraft is based, without the prior written consent of the Secured Party; (ii) remove the Aircraft from the United States; (iii) change Debtor's "residence", "chief executive office", or the "principal place of business", as the case may be, without notifying Secured Party in writing of any such change not less than five (5) days prior to such change;

(6)    To Debtor's knowledge, there are no pending or threatened actions or proceedings before any courts or any administrative agency which, if adversely determined to Debtor, would have a materially adverse effect on the financial condition, business or operations of the Debtor or the ability of the Debtor to carry on its business, to perform its obligations hereunder or under the Note, or to pay or perform any of the Secured Obligations;

(7)    Debtor shall, at its own expense, maintain in effect with insurers of recognized responsibility in all respects satisfactory to the Secured Party all risk (including ground and flight) aircraft hull insurance with respect to the Aircraft for not less than the one hundred twenty-five percent (125%) of the full amount of the Note as may be from time to time outstanding and, if the Debtor operates the Aircraft in any area of actual or threatened hostilities, war, and confiscation risk (including, without limitation, hijacking, air piracy, confiscation, and expropriation by governments) aircraft hull insurance with respect to the Aircraft in such amount, all risk (including, without limitation, fire transit and extended coverage) insurance with respect to any engine when not installed on the Aircraft in an amount not less than the full insurable value of such engine, and public liability and property damage insurance with respect to the Aircraft in amounts satisfactory to the Secured Party as determined in Secured Party's sole and absolute discretion.  All such policies of insurance shall:

(i)    Insure the interests of the Debtor and the Secured Party as their respective interests may appear, losses in all cases to be payable to the Secured Party on a standard policy with long form loss payable clause;

(ii)    Provide that if the insurers cancel such insurance for any reason whatsoever, or if the same is allowed to lapse for nonpayment of premium, such cancellation or lapse shall not be effective as to the Secured Party for thirty (30) days after receipt by the Secured Party of notice by such insurers to the Secured Party of such cancellation or lapse; and

(iii)    Provide that in respect of the interest of the Secured Party in such policies the insurance shall not be invalidated by any action or inaction of the Debtor or any other person and shall insure the Debtor's interests regardless of any breach or violation by the Debtor of any warranties, declarations or conditions contained in such policies.

ELECTRONICALLY FILED - 2020 Feb 14 10:21 AM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000825

Debtor shall either deliver to the Secured Party the policies required by this Section or shall arrange for delivery of appropriate certifications to the Secured Party, from insurance underwriters of recognized standing and acceptable in all respects to Secured Party which shall certify to the Secured Party that the insurance coverage required hereby has been placed in effect.  Debtor hereby authorizes the Secured Party to receive the proceeds of any insurance loss or casualty, and at the sole option and discretion of the Secured Party, to apply such proceeds toward either the repair of the Aircraft or the payment of any of the Secured Obligations.

(8)      Debtor will make the Aircraft available for inspection upon the request of Secured Party.

(9)      Debtor will furnish evidence satisfactory to Secured Party that the records of the Federal Aviation Administration of the United States Department of Transportation (the "**FAA**") show the Aircraft to be registered in Debtor's name and that title is free of all security interests, liens and encumbrances except for the security interest or lien of this Agreement and further at Debtor's sole cost and expense to take all steps that may be necessary to cause any other ownership or security interest, liens or encumbrances, if any, to be removed. Debtor further agrees not to in any way, sell or transfer (whether by whole interest or a fractional interest), grant a security interest, or otherwise dispose of the Aircraft or of any rights in the Aircraft or grant or permit to exist any other liens, charges, encumbrances or interest on or in the Collateral without first obtaining Secured Party's express written permission. If Secured Party incurs any costs or expenses to collect a deficiency or any other amounts that Debtor owes to Secured Party or to otherwise enforce or defend any of its rights under the Secured Obligations, this Agreement or with respect to the Collateral, Debtor will reimburse Secured Party and hold Secured Party harmless and indemnify Secured Party for those expenses, including, without limitation court costs and any other expenses that Secured Party incurs relating to the Collateral and provided, however, that, in the event the Note or any other amounts related to agreements of the Debtor herein contained or otherwise made for the benefit of the Secured Party, are collected by or through an attorney at law, Debtor agrees to pay all costs of and expenses of collection, including, but not limited to, attorneys' fees in the amount of fifteen percent (15%) of principal and interest owing under the Note.

(10)      This Agreement is the valid and binding obligation of Debtor, enforceable in accordance with its terms.

(11)      All information that Debtor has furnished or in the future furnishes to Secured Party concerning Debtor or the Collateral, including, without limitation, its Taxpayer Identification Number of **20-1684138**, all financial statements and all information concerning the condition, quality or value of the Collateral, is and will be correct and complete in all material respects.

(12)      Debtor is a limited liability company organized under the laws of the State of Georgia.

(13)      Debtor's entity organizational control number for the State of Georgia is **0472038.**

(14)      "**Ascension Aircraft, LLC**" is the correct legal name of Debtor identified and indicated on the public records of Debtor's jurisdiction of organization which shows the Debtor to be organized.

An event of default shall occur under this Agreement upon the occurrence of any one or more of the following events or conditions (each an "**Event of Default**"):

ELECTRONICALLY FILED - 2020 Feb 14 10:21 AM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000825

(a)     The failure of any Obligor (as hereinafter defined) to pay, when due, any sum constituting any indebtedness secured hereby;

(b)     The failure of any Obligor to pay, when due, any indebtedness or other sum owed to Secured Party, whether secured by this Agreement or otherwise;

(c)     Any Obligor's breach or failure to perform any covenant, promise, condition, obligation or liability contained or referred to herein, in the indebtedness secured hereby, or in any other agreement to which any Obligor and Secured Party are parties;

(d)     If any representation, statement, or warranty made or furnished in any manner to Secured Party by or on behalf of any Obligor in connection with this Agreement or otherwise related to, arising from or concerning all or a part of the indebtedness secured hereby or any other Secured Obligations was false in any material respect when made or furnished;

(e)     The issuance of any tax levy, attachment, garnishment, levy of execution, or other process against any Obligor or the Collateral;

(f)     The occurrence of any suspension of payment by any Obligor to any creditor or the occurrence of any event which results in the acceleration of the maturity of any indebtedness of any Obligor to others under any promissory note, indenture, agreement or undertaking;

(g)     The death, dissolution, termination of existence, entry of any judgment of, by or against, any Obligor;

(h)     Failure of any Obligor to provide Secured Party with financial information promptly when requested by Secured Party;

(i)     The determination by Secured Party that a material adverse change has occurred in the financial condition of any Obligor from that disclosed in any financial statement of any Obligor previously furnished to Secured Party, or from the condition of any Obligor as most recently disclosed to Secured Party in any manner;

(j)     The transfer of all or substantially all of the property of any Obligor, or the sale, transfer or exchange, either directly or indirectly, any voting securities or membership interests (or other indicia or ownership) in any Obligor;

(k)     If Secured Party reasonably and in good faith deems itself insecure, even though no other Event of Default has occurred hereunder;

(l)     The insolvency, business failure, appointment of a receiver for any part of the Collateral or any other property of any Obligor, the commencement of any bankruptcy or insolvency proceedings, any assignment for the benefit of creditors, of, by or against any Obligor or with respect to all or any part of the Collateral.

Upon the occurrence of any Event of Default described in paragraphs (a) through (k), at Secured Party's sole option and discretion, default shall occur hereunder and the Secured Obligations shall immediately become due and payable all without notice or demand which are hereby expressly waived.   Upon the occurrence of the Event of Default described in paragraph (l) above, default shall simultaneously occur and the

ELECTRONICALLY FILED - 2020 Feb 14 10:21 AM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000825

Secured Obligations shall simultaneously therewith become immediately due and payable without notice or demand which are hereby expressly waived.

The term "**Obligor**" as used in paragraphs (a) through (l) of this Agreement shall mean the Debtor, the Co-Obligor and any entity or individual primarily or secondarily liable upon all or any part of the Secured Obligations whether as maker, co-maker, endorser, guarantor, surety, accommodation party or otherwise, and shall include without limitation Debtor, Larkins Enterprises, Inc., Ascension Air Management, Inc. and Sylvester Jamail Larkins. The term "Obligor" is used for definitional purposes and simply because a party is named as an "Obligor" in this Agreement, it shall not change the substantive status of that party from a guarantor to a primary obligor.

It is hereby agreed that, if any Event of Default shall occur or any other default be made in the payment of all or any part of the Secured Obligations at the time and in the manner therein specified, or if any breach be made of any obligation or promise of the Debtor herein contained, or if any or all of the Collateral be hereafter sold, leased, transferred, mortgaged, or otherwise encumbered without the written consent of the Secured Party first had and obtained, or in the event of the seizure of the Aircraft under execution or other legal process, or if for any other reason the Secured Party may deem itself insecure, then the Secured Obligations shall, at the sole option and discretion of Secured Party, immediately become due and payable in their entirety at the option of the Secured Party.

Upon the occurrence of an Event of Default, the Secured Party may require the Debtor to assemble the Collateral and make it available to the Secured Party at Debtor's sole cost and expense at a place to be designated by the Secured Party which is reasonably convenient. Any requirement of law of reasonable notification of any intended disposition of the Collateral shall be met by posting in the U.S. Mail written notice addressed to all persons entitled to such notice stating the time and place of any public sale or the time after which any private sale or any other intended disposition is to be made, at least ten (10) days prior thereto. Secured Party is authorized in the name of the Debtor to sign and execute any transfer, conveyance or instrument in writing which may be necessary or desirable to effectuate any such disposition of the Collateral, and Debtor hereby irrevocably grants to and appoints Secured Party as Debtor's lawful attorney-in-fact for purposes of such effectuation of any such disposition of the Collateral, such grant and appointment being coupled with an interest. No disposition of any Collateral shall extinguish any obligation of Debtor hereunder or upon the Secured Obligations, except to the extent that the net proceeds are applied thereto. Such net proceeds may be applied by Secured Party toward the payment of the Secured Obligations in such order of application as the Secured Party may from time to time elect.

Secured Party upon the occurrence of any Event of Default may at once proceed to foreclose this security interest in any manner provided by law, or may at its option, and Secured Party is hereby empowered so to do, with or without foreclosure action, enter upon the premises where said Collateral may be and take possession thereof, and remove, sell and dispose of the same at public or private sale, and from the proceeds of such sale retain all costs and charges incurred by Secured Party in the taking or sale of said Collateral, including, but not limited to, attorneys' fees in the amount of fifteen percent (15%) of principal and interest owing under the Note. Any surplus of such proceeds remaining after the full and complete payment or application of proceeds to the Secured Obligations and all other costs and expenses incurred by Secured Party or otherwise authorized to be collected and/or retained by Secured Party (whether pursuant to this Agreement or otherwise) or to which Secured Party is otherwise entitled, shall be paid to the Debtor, or whoever may be lawfully entitled to receive the same. If a deficiency occurs, the Debtor agrees to pay such deficiency forthwith upon demand by Secured Party.

Secured Party or its agent may bid and purchase at any sale made under this Agreement or herein authorized, or at any sale made upon foreclosure of the security interest herein granted.

Waiver of any Event of Default shall not constitute a waiver of any subsequent default or Event of Default. The words "Secured Party" wherever used herein shall include the successors and assigns of Secured Party. This Agreement shall be binding upon the heirs, personal representatives, successors and assigns of the Debtor. If any provision hereof is found to be invalid, this agreement shall be invalid only with respect to the offending provision. This Agreement and all rights and obligations hereunder, including matters of

ELECTRONICALLY FILED - 2020 Feb 14 10:21 AM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000825

construction, validity and performance shall be governed by the laws of Georgia where it will be accepted, executed and performed in part and where any amounts due under this Agreement are payable. All terms used herein which are defined in the Uniform Commercial Code of Georgia, as amended, restated and supplemented from time to time (the "**UCC**") but not otherwise expressly defined herein shall have the same meaning herein as in the UCC. Every power given herein is coupled with an interest and is irrevocable by death or otherwise. Time is of the essence of this Agreement.

Provided, however, that if the Debtor, or any other Obligor, or such parties' respective heirs, administrators, successors or assigns shall pay the Secured Obligations in accordance with the terms thereof, and shall keep and perform all the terms, covenants, and agreements in this Agreement and all other agreements between Debtor or any other Obligor and Secured Party relating to, concerning or otherwise arising from all or any of the Secured Obligations, then this Agreement shall become null and void upon satisfaction of such terms, covenants, and agreements and a written release of this Agreement by Secured Party.

Secured Party shall have the rights and remedies of a secured party under applicable law as to the Collateral, and the rights and remedies evidencing the Secured Obligations or executed in connection therewith, all of which rights and remedies shall be cumulative.

Secured Party may file copies of the Note, this Agreement or any other agreements or documents between any Obligors and Secured Party relating to, concerning or otherwise arising from all or any of the Secured Obligations, with any public authority it deems appropriate. At Secured Party's request, Debtor will sign and furnish any additional documents that are needed to properly perfect Secured Party's security interest, register the Aircraft, or file of record this Agreement and any amendments, extensions, supplements, modifications or replacements hereto. Debtor will also reimburse Secured Party for all costs and expenses in connection with the preparation or filing of financing statements, registering the Aircraft and filing or recording this Agreement and any amendments, modifications, supplements, or replacements to this Agreement.

Debtor hereby irrevocably authorizes the Secured Party at any time and from time to time to file in any filing office in any jurisdiction any initial financing statements and amendments thereto that (a) indicate the Collateral (i) as all assets of the Debtor or words of similar effect, regardless of whether any particular asset comprised in the Collateral falls within the scope of Article 9 of the UCC or the Uniform Commercial Code of any other jurisdiction; or (ii) as being of an equal or lesser scope or with greater detail, and (b) provide any other information required by part 5 of Article 9 of the UCC, or any other jurisdiction, for the sufficiency or filing office acceptance of any financing statement or amendment, including whether the Debtor is an organization, the type of organization and any organizational identification number issued to the Debtor. The Debtor agrees to furnish any such information to the Secured Party promptly upon the Secured Party's request. The Debtor also ratifies its authorization for the Secured Party to have filed in any jurisdiction any like initial financing statements or amendments thereto if filed prior to the date hereof.

If any provisions of this Agreement are invalid or cannot be enforced for any reason, the remainder of this Agreement will stay in effect. Any provisions of this Agreement that are contrary to applicable law will be considered to be modified to the extent required to conform with the law, if possible, and otherwise omitted from this Agreement.

Unless otherwise provided herein, all notices, requests and demands to or upon a party to this Agreement to be effective, shall be in writing. Notices in writing shall be delivered personally or sent by certified or registered mail postage pre-paid or by facsimile and shall be deemed received in the case of personal delivery, when delivered, in the case of mailing, on the third (3rd) day after mailing, and, in the case of facsimile on the day after transmittal, provided that the notice must be sent to the facsimile number set forth below and its receipt must be followed by: (i) a copy of the notice deposited in certified mail or registered mail, postage prepaid within twenty-four (24) hours of transmission; and (ii) a copy of the confirmation of receipt of such facsimile notice, addressed as follows:

If to Debtor:              Ascension Aircraft, LLC

ELECTRONICALLY FILED - 2020 Feb 14 10:21 AM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000825

Attn: Mr. S. Jamail Larkins
2007 Flightway Drive
Chamblee, Georgia 30341
Telephone:        (404) 991-2362, ext. 117
Facsimile:        (678) 224-7034

With a copy to:          Stokes Wagner, A.L.C.
Attn: Hayden Pace, Esq.
One Atlantic Center, Suite 2400
1201 West Peachtree Street, N.W.
Atlanta, Georgia 30309
Telephone:        (404) 766-1863
Facsimile:        (404) 766-8823

If to Secured Party:     CLBD Real Estate Holdings, LLC
Attn: Mr. Cliff Kennedy
3460 Moye Trail
Duluth, Georgia 30097
Telephone:        (770) 231-0455
Facsimile:        _____ N/A _____

With a mandatory copy to:   Howick, Westfall & Kaplan, LLP
Attn: M. Todd Westfall, Esq.
Suite 600, One Tower Creek
3101 Towercreek Parkway
Atlanta, Georgia 30339
Telephone:        (678) 384-7005
Facsimile:        (678) 384-7034

or to such other address as each Party to this Agreement may designate for itself by like notice given in accordance with the provisions of this Agreement.  Notice by a Party to this Agreement shall be deemed effectively given when provided by the Party's legal counsel.

Debtor hereby acknowledges that it has selected the Aircraft for purchase without any assistance or inducement from Secured Party or its agents or employees and that except for the advancement of funds pursuant to the Note, this Agreement and the other loan documents related thereto, Secured Party has not been involved in the purchase decision or purchase transaction. Debtor agrees that Secured Party has made no warranties whatsoever concerning the Aircraft, express or implied, whether of airworthiness, merchantability, condition, description, durability, fitness or suitability for any particular use or purpose or otherwise, and that Secured Party, except where prohibited by applicable law, hereby disclaims all such warranties. Debtor acknowledges and agrees that Secured Party has not authorized any third party to make any representations, warranties, promises, guaranties, covenants or agreements, oral or written, concerning the Aircraft, the Note, this Agreement or any other agreements or documents between any Obligors and Secured Party relating to, concerning or otherwise arising from all or any of the Secured Obligations, on Secured Party's behalf, and further acknowledges and agrees that no such third party is Secured Party's agent and that Secured Party shall not be bound by any such purported representations, warranties, promises, guaranties, covenants, or agreements. In consideration of the Note, this Agreement and all other agreements or documents between any Obligors and Secured Party relating to, concerning or otherwise arising from all or any of the Secured Obligations, except where prohibited by applicable law, Debtor completely waives and surrenders the right to pursue, assert, or interpose any claim or defense against the Secured Party in law or in equity, including, without limitation, any right to recoupment, setoff, or counterclaim, based upon the Collateral's airworthiness, merchantability, condition, description, durability, fitness or suitability for any particular use or purpose.

ELECTRONICALLY FILED - 2020 Feb 14 10:21 AM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000825

*(Signatures of Parties Set Forth on the Following Pages)*

*(Remainder of this Page Intentionally Left Blank)*

ELECTRONICALLY FILED - 2020 Feb 14 10:21 AM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000825

*(Signature Page to Aircraft Security Agreement)*

**IN WITNESS WHEREOF,** Debtor and Secured Party have each executed this Agreement or have caused this Agreement to be executed by its duly authorized representative as of the Agreement Date, with the intention that this Agreement is to take effect as an instrument under seal.

**DEBTOR**:

**ASCENSION AIRCRAFT, LLC**
a Georgia limited liability company

By: Larkins Enterprises, Inc. its sole member

Signed, sealed and delivered before me
this ___ day of December, 2015.

Notary Public

(Notary Seal)

By: _____
Its: CEO / President
Print Name: _____

(Company Seal)

**SECURED PARTY**:

**CLBD REAL ESTATE HOLDINGS, LLC**

Signed, sealed and delivered before me
this _3_ day of December, 2015.

Notary Public

(Notary Seal)

By: _____
Its: Manager
Print Name: CLDC Kmey

{File: 00108781.DOCX / 2}

Exhibit D, Page 32 of 32

**Thursday, February 27, 2020**                                    **VREF Copyright 2020**





# 2015 ECLIPSE 550

REGISTRATION#: N826ES

SERIAL#: 282

AIRFRAME TOTAL TIME (AFTT): 1710

SINCE MAJOR OVERHAUL(SMOH)

   SMOH - ENGINE#1: 1710

   SMOH - ENGINE#2: 1710

| ADD-ONS/MODS | $RETAIL | $WHOLESALE |
|---|---|---|
| No Engine Program - TBD | 0 | 0 |
| Aircraft Maintenance Status | -100,000 | -90,000 |

## SUMMARY

| VALUE ITEM | $RETAIL | $WHOLESALE |
|---|---|---|
| BASIC PRICE | 1,800,000 | 1,558,800 |
| ADDS/DEDUCTS | -100,000 | -90,000 |
| AIRFRAME | -191,100 | -191,100 |
| ENGINE(S) | -151,200 | -151,200 |
| CONDITION | 0 | 0 |
| **TOTAL:** | **$1,357,700** | **$1,126,500** |

**Thursday, February 27, 2020**                                                                    **VREF Copyright 2020**

**COMMENTS**

The Aircraft has no reported engine program on the two Pratt & Whitney engines. This will affect the value of the aircraft further than the current shown retail and wholesale pricing. The 100,000 deduct for aircraft maintenance status is an estimate due to the fact the aircraft has not been flown or maintained during the apparent 8+ months. Aircraft maintenance will be required to make the aircraft airworthy. This number could exceed $100,000 depending upon status of non completed calendar maintenance items, service bulletins, etc. The ADS-B status was provided as unknown. If this is required, the ADS-B alone is approximately 25-30K. This is an approximate value evaluation that was performed with the data provided. Further examination of the aircraft would be needed to help determine a more detailed evaluation.

**RETAIL PERCENT CHANGE**

| | |
|---|---|
| Change Last Quarter: | -2.7% |
| Change Last 12 Months: | -14.29% |
| Change Since New: | -39.9% |
| Price When New: | $2,995,000 |

**BASE PRICE INCLUDES**

Avidyne Avio integrated package with dual PFDs and 1 MFD, AvioNG 1.3 on 2008, TAWS B, Skywatch HP, color radar, Elec apc plates, XM Wx, & 3-ax a/p, excellent P&I, ADS-B, NDH.

**PERFORMANCE & SPECS**

| | |
|---|---|
| Config | Twn, fanjet |
| Mx sts | 6 |
| Mx T.O. wt | 6000 lbs |
| Cruise (Max) | 375 kts |
| Range (max NBAA) | 1125 nm |
| T.O. | 2433 ft |
| Landing | 2790 ft |
| Wing span | 37ft 9in |
| Length | 33ft 5in |
| Height | 11 ft |

**MARKET DATA & RECENT ADS**

ADs = 07-24-12 fuel filler; 08-02-04 AOA system; 08-02-04 AOA; 08-16-15 throttle; 08-19-01 AOA probe; 10-20-24 avionics; 11-06-06 engine surge; 13-16-04 Avio avionics. Eclipse 500 prices could range from $300k (Non-ETT V1.0) to $2M+ (IFMS TE) depending on mod status of avionics platform.

Demand Rating: CCC

**Thursday, February 27, 2020**                                                                          **VREF Copyright 2020**

**ENGINE**
P&W 900lbs TBO 3500
PW610F

Average Overhaul $250,000

**IMPORTANT NOTE**
Prices depicted in Vref are averages based on the marketplace from the previous quarter. These average prices may not
represent a specific serial number. Each serial number is unique. Prices can vary widely due to time, condition, maintenance
history and equipment.



**Exhibit F**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| **In re:** | ) | Case No. 20-62473-pmb |
| | ) | |
| **Ascension Air Management, Inc.** | ) | Chapter 7 |
| | ) | |
| *Debtor.* | ) | Judge Baisier |
| | ) | |
| Mason Holland, as Trustee for the | ) | |
| Holland Family Trust, and MMT, LLC, | ) | **Contested Matter** |
| | ) | |
| *Movants,* | ) | |
| v. | ) | |
| | ) | |
| S. Gregory Hays, as Chapter 7 Trustee, | ) | |
| | ) | |
| *Respondent.* | ) | |

**[PROPOSED] ORDER**

This matter came before the Court on the **Motion of Mason Holland, as Trustee for The Holland Family Trust, and MMT, LLC for Relief from the Automatic Stay, or Alternatively for Adequate Protection** (the "Motion"). Based upon the Court's review of the Motion; and sufficient notice having been given as required by applicable rules; and the Court having jurisdiction to consider the Motion; and that the Motion is a core matter under 28 U.S.C. § 157(b)(2); and after due deliberation and sufficient cause appearing thereof, it is hereby

ORDERED that the Motion is **GRANTED** (defined terms used in this Order shall have the meaning assigned to them in the Motion);

IT IS FURTHER ORDERED that the automatic stay imposed pursuant to 11 U.S.C. § 362 is lifted in its entirety as to the Trust, MMT, and their successors and

assigns, so as to allow them to exercise any and all rights and remedies they may have against the Aircraft and the Debtor under the Aircraft Loan and Security Agreement and/or applicable law, including, without limitation, prosecution and defense of the South Carolina Action, the filing or defending of any third-party claims or cross-claims, determination of all interests and priorities in the Aircraft, the enforcement of any and all judgments or settlements arising from or in the South Carolina Action (whether by trial, mediation, or otherwise), the enforcement of any and all security interests, the issuance of notices of private or public sale or other disposition, the conduct of any private or public sale or other disposition, and the collection, receipt and/or application of any proceeds to satisfy the obligations owed to the Trust or MMT; and

IT IS FURTHER ORDERED that the provisions of Bankruptcy Rule 4001(a)(3) are not applicable to this Order and the Trust and MMT may immediately take any action contemplated and otherwise permitted in this Order with respect to the Aircraft, the Debtor and the South Carolina Action.

So Ordered this _____ day of _____, 2020

_____
**Paul M. Baisier**
**United States Bankruptcy Judge**

**Prepared and Presented by:**

___/s/ Lydia M. Hilton_____
Lydia M. Hilton
Georgia Bar No. 001810
lhilton@bfvlaw.com
BERMAN FINK VAN HORN, P.C.
3475 Piedmont Road, Suite 1100
Atlanta, Georgia  30305
Ph:  404.261.7711
Fax: 404.233.1943

*Counsel for Mason Holland, as Trustee*
*for the Holland Family Trust, and MMT, LLC*

## Distribution List

**Ascension Air Management, Inc.**
**Attn:  Jamail Larkins**
**2447 Field Way NE**
**Atlanta, GA  30319-4094**

Counsel for Debtor
Mike Robl, Esq.
3754 LaVista Road
Suite 250
Tucker, GA 30084
michael@roblgroup.com

S. Gregory Hays
Chapter 7 Trustee:
Suite 555
2964 Peachtree Road, NW
Atlanta, GA 30326-1085
ghays@haysconsulting.net

Counsel for Trustee
Michael J. Bargar
Arnall Golden Gregory, LLP
Suite 2100
171 17th Street, N.W.
Atlanta, GA 30363
michael.bargar@agg.com

**Aero Specialty**
**18216 Edison Avenue**
**Chesterfield, MO 63005**

Darrell Mays
c/o John Monahon Esq.
Ste 500, 400 Colony Sq.
1202 Peachtree
Atlanta, GA 30361
jmonahon@trusted-counsel.com

**IRS**
**Cincinnati, OH 45999-0038**

**United States Attorney**
**Northern District of Georgia**
**75 Ted Turner Drive SW, Suite 600**
**Atlanta GA 30303-3309**

**Jamail Larkins**
**2447 Field Way NE**
**Atlanta, GA 30319**

**John Probst**
**371 Clear Spring Ct**
**Marietta, GA 30068**

**Multi Service**
**8600 West 100th St**
**Overland Park, KS 66210**

**Region Capital**
**323 Sunny Isles Blvd Suite 501**
**North Miami Beach, FL 33160**

Air Columbia, LLC
Air J.P., LLC
Jonathan A. Akins
Schreeder, Wheeler & Flint, LLP
Suite 800
1100 Peachtree Street NE
Atlanta, GA 30309
jakins@swfllp.com

**Triple T Holdings, Inc.**
**Alan Armstrong**
**2900 Chamblee Tucker Road**
**Building 5, Ste. 350**
**Atlanta, GA 30341-4100**

BPAJRNEA Aviation, LLC
Graham Keith Brantley
James C. Joedecke, Jr.
Anderson Tate & Carr, P.C.
Suite 4000
1960 Satellite Blvd.
Duluth, GA 30097
gbrantley@atclawfirm.com
jjoedecke@atclawfirm.com

Executive Visions
John M. McGovern
McGovern Law Firm
7000 Miller Court East
Norcross, GA 30071
jmcgovern@mcgovernfirm.com

Sutlive Aviation, LLC
TURNER   PADGET   GRAHAM   &
LANEY, P.A.
Robert P. Mangum
PO Box 1495
209 Seventh Street, Third Floor
Augusta, GA 30903
rmangum@turnerpadget.com

CLBD Real Estate Holdings, LLC
Louis G. McBryan
McBryan, LLC
Building B-3, Suite 100
6849 Peachtree Dunwoody Road
Atlanta, GA 30328
lmcbryan@mcbryanlaw.com